De Wolf, Executor, etc., vs. Lawson and others.

DE WOLF, Executor, etc., vs. LAWSON and others.

*November 6 — November 25, 1884.*

WILLS.    *(1) Perpetuities.    (2) What is a "charitable corporation?"    (3) Power of sale construed: Equitable conversion.*

1. A devise of land which suspends the absolute power of alienation for a fixed period without reference to lives in being, is void under secs. 2038, 2039, R. S.
2. A religious corporation, such as the trustees of a church, is not a *charitable corporation* within the meaning of the exception in sec. 2039, R. S.
3. A will directed the executor to rent real property and pay the net income thereof to the trustees of two churches named, in equal moieties every year for twenty years after the testator's death, and at the expiration of that period to sell the property and distribute the proceeds among certain persons.    *Held,* that the express direction to sell at the expiration of twenty years excludes all authority to make a previous sale; and no equitable conversion of the land into money could be deemed to have taken place until the expiration of that period.    The devise was therefore within the prohibition of the statute against perpetuities, and void.

APPEAL from the Circuit Court for *Walworth* County.

| | |
|---|---|
| 61 | 469 |
| 87 | 458 |
| 61 | 469 |
| 105 | 506 |
| d105 | 507 |
| 105 | 509 |
| 61 | 469 |
| L113 | ¹238 |
| 61 | 469 |
| e115 | ¹128 |
| e115 | ¹129 |
| 115 | ¹130 |
| 115 | ¹131 |
| 115 | ¹143 |
| 115 | ³146 |

This was a proceeding commenced in the county court of Walworth county to obtain a construction and a determination of the validity of certain clauses in the will of Robert Lawson, deceased. The third and sixth clauses of such will are as follows:

"*Third.* I hereby give, devise, and bequeath unto my said executor all my real and personal estate in trust and for the uses and purposes hereinafter declared to be my will."

"*Sixth.* It is my will, and I direct my executor as soon as the same can be done without a sacrifice of my estate, to give to the director, treasurer, and clerk of the school district in which I now live, being district number ——— in said town of Darien, $2,000 for the express and only purpose of building a suitable school house for the use and benefit of said district; that the same be paid by my said executor in such sums or instalments as he may think fit, not at any time exceeding the amount actually expended upon said school house, and in full upon the completion thereof."

The other clauses in question, the ninth, eleventh, and twelfth, are stated in the opinion.

To the petition of the executor praying a construction of the will, the heirs at law of the deceased filed an answer claiming that the third and sixth clauses of the will were void so far as they create a trust in favor of the district treasurer, director, and clerk of the school district; and that the eleventh and twelfth clauses were void.

The county court held the will to be valid in all its provisions, and the heirs appealed to the circuit court. The latter court held that the trust expressed in the will to pay $2,000 to the school district was valid, but that the eleventh and twelfth clauses of the will suspended the power of alienation of the real estate for the definite period of twenty years from the death of the testator and were in violation of the statutes against perpetuities, and that the devise of

the real estate in trust for the purposes expressed in said last mentioned clauses was wholly void. From the judgment entered accordingly, so far as it adjudged any portion of the will to be invalid, the executor appealed.

*A. S. Spooner* and *T. D. Weeks*, for the appellant, contended, *inter alia*, that the bequest to the trustees of the Methodist and Baptist societies was purely a charitable bequest for a charitable use, and could not be affected by the statute against perpetuities. 2 Perry on Trusts, secs. 687, 697, 701, 709, 731, 736, 748; 2 Story's Eq. Jur. 1164, 1167, 1170; 2 Redf. on Wills, 500–502; Williams on Executors, 1057–1070; 1 Jarman on Wills, 208–210, 251-263, note 1; 4 Kent's Comm. 283, note 1; 5 Allen, 66; 11 id. 455; 13 Sim. 73; 2 Drew. 245; 4 id. 350; 8 Hare, 32; *Owens v. Missionary Society*, 14 N. Y. 380–385, 409; *Jackson v. Phillips*, 14 Allen, 553–556; *Wright v. Trustees M. E. Church*, 1 Hoff. Ch. 202; *Dodge v. Williams*, 46 Wis. 70–95; *Williams v. Williams*, 8 N. Y. 525; *Shotwell v. Mott*, 2 Sandf. Ch. 46–54. There was an equitable conversion of the real estate, and the court will treat it as money, not as land. 1 Williams on Executors, 729, 730; 3 Redf. on Wills, 140, sec. 5, 141; 1 Story's Eq. Jur. 790–793; 2 id. 1212–14; 85 N. Y. 53; 79 id. 602; 23 id. 69; 3 Wheat. 563; 34 Wis. 505; 46 id. 70, 107; *Rinehart v. Harrison's Ex'rs*, 1 Baldwin C. C. 177; *Fairly v. Kline*, Pen. (2–3 N. J. Law), 551, *754; *High v. Worley*, 33 Ala. 196; *Hocker v. Gentry*, 3 Met. (Ky.), 463; *Burnside's Adm'rs v. Wall*, 9 B. Mon. 322; *Stagg v. Jackson*, 1 N. Y. 206; *Meakings v. Cromwell*, 5 id. 136; *Reading v. Blackwell*, 1 Baldwin C. C. 166; *Parkinson's Appeal*, 32 Pa. St. 455; *Estate of Hebertson*, 3 Phila. 436; *McClure's Appeal*, 72 Pa. St. 414; *Janes v. Throckmorton*, 57 Cal. 368; *Shaw v. Chambers*, 48 Mich. 355; *Jones v. Caldwell*, 97 Pa. St. 42.

There was a brief by *H. T. Sharp*, guardian *ad litem* of the minor children of *Ellen Warman*, the legatees named in

the twelfth clause of the will. To the point that there was an equitable conversion of the land so that it would be treated as money for the purposes of the will, he cited, in addition to cases cited in the other briefs: *Marsh v. Wheeler*, 2 Edw. Ch. 156; 3 id. 79; 3 Sandf. Ch. 341; 14 N. Y. 41; 34 Barb. 388; 14 Grat. (Va.), 369; *Haxton v. Corse*, 2 Barb. Ch. 506; 1 Denio, 448; *Wurts' Ex'rs v. Page*, 19 N. J. Eq. 365; *Scudder's Ex'rs v. Vanarsdale*, 13 id. 109.

For the respondents there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

COLE, C. J. The circuit court held that the eleventh and twelfth clauses of the will were in violation of the statutes of this state against perpetuities, and therefore void. The correctness of that decision is the main question before us.

The provisions of the will, so far as material to be considered, are briefly these: The testator gave all of his real and personal estate to his executor in trust for the use and purposes therein declared. In the fourth clause he says that his wife, Ann Lawson, is in feeble health and weak in mind; he therefore commits her care to his executor; declares that it is his will that she be suitably fed and clothed, and that she have all medical and other care so that her every want may be supplied as fully and perfectly as possible; and he directs this provision to be liberally construed, and that ample means be provided out of his estate to defray all necessary charges for its fulfilment. In the ninth clause he directs his executor to sell so much of his real estate as may be necessary to pay the bequests and legacies named, giving his executor full power and authority to convey the same for such price and on such terms as to payment as he shall deem best calculated to secure the highest price, but he says he does not wish his homestead to be sold under this provision. In the eleventh clause he provides that, after paying all debts, legacies, and bequests specified, it is his will, and he directs

his executor, " to put and keep in good repair the rest and residue of my estate, and rent the same for the best rent he can obtain; pay the taxes thereon, and after paying all taxes, expenses, and repairs, and his reasonable charges, that he pay to the trustees of the Baptist and Methodist societies of the village of Delavan, in equal moieties, the balance of such rent remaining each and every year, for the space of twenty years from and after my decease, for the support of the preaching of the gospel in the several places of worship of said churches respectively." The twelfth clause reads as.follows: " At the expiration of twenty years it is my will that my said executor sell the real estate then remaining for the best price that he can obtain therefor; that over and above the expenses of such sale, and his proper costs and charges in that behalf, he pay the then remaining balance to the then living children of my daughter *Ellen*, now *Mrs. Ellen Warman*, in equal proportions, share and share alike."

The objection taken to these clauses is that they suspend the power of alienation for the period of twenty years, and are in direct violation of secs. 2038 and 2039, R. S. The first section provides that "every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed." The next section provides that "the absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except when real estate is given, granted, or devised to literary or charitable corporations which shall have been organized under the laws of this state, for their sole use and benefit."

The late distinguished chief justice observed in *Dodge v. Williams*, 46 Wis. 76–96, that these provisions, limiting the

rule against perpetuities to realty, manifestly abrogate the English doctrine as applicable to personalty. There can be no question but the statute refers to real estate alone. It may, however, admit of doubt whether the remark of the chief justice is strictly accurate in saying that it abolishes the common rule of perpetuities as to personalty when applied to private trusts. The English doctrine of perpetuities, as the chief justice says, applied to estates both real and personal. It was founded on convenience and public policy, which demand the free and active circulation of property as the mainspring of trade and commerce. If the alienation of property were suspended, the capital of the country withdrawn from trade, the incentives to exertion in every branch of industry would be greatly diminished. Such a state of things would be inconsistent with national growth and development, and the restrictions which were intended by the donors to guard the objects of their bounties against the efforts of their own improvidence would operate to the serious disadvantage of all. These are some of the reasons given for the doctrine as to perpetuities. 1 Jarman on Wills, ch. 9, § 2; Lewis on Perpetuities, 5; Perry on Trusts, § 377 *et seq.* Therefore the law would only allow the testator to tie up his property for a private trust for a life or lives in being, and twenty-one years and nine months. If he made a gift depend upon a condition, limitation, or event which required more than that period for its accomplishment, he created a perpetuity which was void. Perry on Trusts, § 736; 4 Kent's Comm. 272.

This common rule of perpetuity as to personalty may be unaffected by our statute. However that may be, the above clauses of the will plainly refer to real estate, and come within the prohibition of the statute, unless saved by the exception in sec. 2039,— a question which will be subsequently considered; for, as to the rest and residue of the estate, it will be seen that the power of alienation is sus-

De Wolf, Executor, etc., vs. Lawson and others.

pended for the period of twenty years. If the will is valid, it is indisputably true, as argued by the counsel for the heirs, it vested in the executor the title in fee simple in possession to the residue of the testator's estate, subject to the execution of the trusts created. The beneficiaries took no estate therein, but could enforce the execution of the trust. Sec. 2086. The executor, as trustee, could not sell and convey such residue until the expiration of twenty years from the death of the testator. Any attempted conveyance before that time would be in contravention of the trust, and absolutely void. Sec. 2091. Consequently, the power of alienation is suspended as to the residue for a gross term of years, irrespective of lives in being. This comes within the express prohibition of the statute, and is void.

These provisions are derived from the statutes of New York, and have many times come before the courts of that state for exposition. In *Hone's Ex'rs v. Van Schaick*, 20 Wend. 564, Mr. Justice BRONSON, when considering them, said: "Every estate is void in its creation which is so limited that the absolute power of alienation may be suspended for more than two lives in being at the creation of the estate. The lives must be designated, and life in some form enter into the limitation. No absolute term, however short, can be maintained. The testator attempted, by means of a trust to receive rents and profits, to render his lands inalienable for a term of which more than nineteen years remained unexpired at the time of his death. This he could not do. The statute had forbidden it. The whole trust estate, and the remainders limited upon it, are consequently void. *Coster v. Lorillard*, 14 Wend. 265; *Hawley v. James*, 16 Wend. 61." To the same effect are the decisions in *Boynton v. Hoyt*, 1 Denio, 53; *Tucker v. Tucker*, 5 N. Y. 408; *Jennings v. Jennings*, 7 N. Y. 547; *Irving v. De Kay*, 9 Paige, 521; *Converse v. Kellogg*, 7 Barb. 590; *Burrill v. Boardman*, 43 N. Y. 254; *Rose v. Rose*, 4 Abb. Ct. App. 108. It follows

from these authorities that, as the testator framed the limitations in the eleventh and twelfth clauses of the will, the vice of perpetuity attaches to them. The alienation of the residue of the real estate is suspended for twenty years, without any regard to lives in being.

But it is said in support of the will that the rules of construction are never strained to defeat a devise; and when the instrument admits of a construction which will sustain it, it must be adopted. Another rule invoked is that the construction is not to be varied by subsequent events, but that the will speaks from the death of the testator, and its different clauses must be considered with reference to that time. These rules for the construction of wills are found in the elementary works on the subject, and are doubtless correct. See 3 Jarman on Wills, ch. 51; 2 Williams on Ex'rs, 1188. Arguing from these premises, it is said the testator's entire estate might possibly be required to pay his debts and the legacies, and for the necessary support of his widow. These are clearly made the first charge upon his estate, and must be satisfied if they should exhaust the whole estate; but, if the entire estate was consumed for these purposes, then, surely, there would be nothing for the residuary clauses to operate on. As a matter of course, if there were no residue, there could be no property the title of which was suspended from alienation. This is too plain for discussion. But we must assume that there was a residue of the real estate remaining unsold after satisfying the other provisions of the will; otherwise, mooting this question as to the validity of these clauses is an idle and unprofitable discussion. And this assumption is according to the fact as established by the evidence. It appears that a considerable portion of the testator's property falls within the operation of the eleventh and twelfth clauses, and must be disposed of as therein indicated, if they are valid. By these clauses the executor is directed, after selling enough of the estate — ex-

cluding the homestead — to satisfy the other provisions of the will, to keep the rest and residue of the real estate in good repair, rent the same for the best rent he can obtain, pay all taxes, and for necessary repairs, and then pay the balance remaining in equal moieties to the trustees of the Baptist and Methodist societies in Delavan, each and every year for twenty years, for the support of the preaching of the gospel in their several places of worship. At the expiration of twenty years the executor is directed to sell the real estate then remaining, and pay the proceeds to the then living children of his daughter, *Mrs. Ellen Warman.* It is apparent the testator did not intend this real estate should be sold until the lapse of that period, and a sale before that time would be in direct violation of the trust created. The express direction for the sale of the land at the expiration of twenty years excludes all authority to make any previous sale. Indeed, the intention of the testator is entirely clear upon that point. Therefore, is it not perfectly clear that here was a trust imposed upon real estate, a trust in lands, and the rules to be applied to it, so far as questions of alienability are concerned, are those which govern trusts of that character? This being so, how is it possible to escape the conclusion that the devise of the residue of the real estate is obnoxious to the objection that it creates a perpetuity forbidden by the statute?

But an effort is made to sustain the will under the doctrine of equitable conversion. It is said that the real estate of the testator must be deemed as equitably converted into personalty at his death,— consequently the rule as to perpetuity cannot apply. The principle on which the doctrine of conversion rests is that whatever, in a will or other instrument, is directed or agreed to be done, is in equity considered as actually performed. *Fletcher v. Ashburner,* 1 Bro. C. C. 497; 1 Lead. Cas. Eq. 1118, 1123, 1170, and cases in the notes; *Arnold v. Gilbert,* 5 Barb. 192; *Kane v. Gott,* 24

Wend. 660; *Craig v. Leslie*, 3 Wheat. 563. A conversion may take place where, by a will, land is devised or money given to a trustee, with directions in the one case to sell the land and pay over the proceeds to the beneficiary, and in the other, to invest the fund in the purchase of land to be conveyed to him. 1 Pomeroy's Eq. Jur. § 371; 1 Story's Eq. Jur. §§ 791, 792, 793. The general rule is to date the conversion in these cases as taking place on the death of the testator, unless there is something special in the power of sale making its exercise or performance depend on the happening of some event or contingency to arise subsequently, or on the discretion of the executor or trustee to sell or not. But under our statute the execution of the power cannot be made to depend on any event which might possibly carry it beyond the duration of two lives in being; if it does, it is in conflict with the provisions of the statute. The cases of *Arnold v. Gilbert*, 5 Barb. 192; *Savage v. Burnham*, 17 N. Y. 561; *Phelps's Ex'r v. Pond*, 23 N. Y. 69; *Everitt v. Everitt*, 29 N. Y. 39; *Levy v. Levy*, 33 N. Y. 97; *Burrill v. Boardman*, 43 N. Y. 254, are clear upon this point. When did the testator intend the residue of his real estate should be converted into money? Certainly not before the expiration of twenty years after his death. Will equity convert the estate against the express intention and direction of the testator; if so, upon what principle? Is not the very ground of the doctrine the intention of the testator, and will equity make land money, or money land, except in furtherance of that intention? Surely not. See sections of Story's Eq. Jur., above cited. In the present case the residue of the real estate is to be sold and the proceeds to become money after twenty years; not before. "When that period arrives the estate will be deemed to undergo the change directed by the will, whether then actually sold or not. Until then the testator not only contemplated no change, but, on the contrary, forbid it " *(Savage v. Burnham)* by the strongest implication.

The case of *Dodge v. Williams*, 46 Wis. 70, is relied on to sustain the position that under the provisions of the will the real estate was equitably converted into personalty at the death of the testator. This is a misapprehension of that decision. In that case it was claimed by the counsel, who challenged the validity of some of the trusts created, that they contravened the law of perpetuities. The will gave to the executors, as executors, the power of sale of the testator's realty. The testator's property was principally personalty. A small fraction was real estate. The executors proceeded and converted this into money before the suit for a construction of the will was instituted. It was not conceded — as the learned counsel in this case suppose — that the executors were forbidden to sell the real estate for five years. On the contrary, Judge Downer claimed (I quote from his brief on file) "that as to the real estate the will of the testator never, for a day, an hour, or a moment, prohibited or delayed the sale. Why? Because the will gave full authority to the executors to sell and convey the real estate at any time, and the court below found as a fact that they did, as executors, sell and convey all the real estate for $2,500 before the suit was commenced. It is not true that the will required the executors or temporary trustees to hold this real estate for five years or any other time." This view of the power of sale given the executors prevailed with the court. The idea is not made prominent in the opinion, but we all thought the executors had power to sell at any time; and, as the testator intended all his realty to be sold, the power of sale was held to be imperative, and the doctrine of equitable conversion was applied. But the case is no authority on the point that an equitable conversion of the residue will be deemed to have taken place in this case from the death of the testator, contrary to his plainly expressed intentions.

This brings us to the question whether the trust in clauses

11 and 12 can be sustained under the exception in sec. 2039; in other words, Can it be fairly said that a trust for a term of years, for the benefit of the trustees of the Baptist and Methodist societies of Delavan, is a devise of real estate to a "literary or charitable corporation," and for the "sole use and benefit" of such corporation, within the meaning of that exception? It seems to us not. We think the charitable corporation there referred to is not a religious corporation. True, it is sometimes said, in analogy to the statute of Elizabeth (43 Eliz. c. 4), that a corporation for a charitable purpose may include a trust, among other things, for the following persons or purposes: for building or repairing or ornamenting a church; distributing Bibles or religious books; for a minister for preaching; and, generally, any public religious object whatever, provided the religion was not one subversive of good morals. Marsden's Perpetuities, 296. But in this exception the words "charitable corporation" are not used in any such broad sense. They are not intended to include a corporation organized and existing for religious and spiritual purposes, as the trustees of the Baptist and Methodist societies clearly are. This amendment to sec. 15, ch. 83, R. S. 1858, as the revisers, in their notes, say, was made to allow grants or devises in perpetuity to literary and charitable corporations organized under the laws of this state. They did not think it best to extend the exception so as to include religious corporations, but leave it to apply only to those which are formed for advancing literary or charitable ends. We have no doubt the legislature, in enacting the section, intended this construction should be placed upon the exception. It was not contemplated that the words "charitable corporation" should be so enlarged as to include what is generally called a religious corporation.

The circuit court held the bequest to pay the school district in which the testator lived, $2,000, according to the

sixth clause, valid. There is no appeal by any one from that part of the judgment; therefore it is not before us for review. The circuit court does not seem to have passed upon that part of the ninth clause in which the testator says it will not be necessary, and that he does not wish his homestead sold for the payment of debts and legacies. Under the circumstances we do not feel called upon to consider the effect of that clause, which the circuit court did not construe.

It follows from these views that so much of the judgment of the circuit court construing the will as was appealed from is affirmed. The taxable costs and disbursements on both sides in this court are ordered to be paid out of the estate. The cause is remanded to the court below for further proceedings according to this opinion.

*By the Court.*— Ordered accordingly.

