## BARTLETT v. GILL, Collector of Internal Revenue.

(District Court, D. Massachusetts. January 5, 1915.)

No. 26.

1. INTERNAL REVENUE ☞8—LEGACIES SUBJECT TO WAR REVENUE TAX—SHARES IN REAL ESTATE TRUSTS.

A testator left to his children shares in a number of so-called real estate trusts, organized and owning property in Massachusetts. Such associations are not provided for by the laws of the state, but are formed for the purpose of owning, managing, improving, and selling real estate, the title to which is in trustees, and the interest of each member is represented by transferable shares. Provision is made for the exemption of the trustees and shareholders from personal liability, and the trustees are made active managers of the business, subject to control, in varying de-

grees, by the shareholders. In some cases the time of termination of the trust is fixed, in others not. In some cases it is provided that on such termination the property shall be divided among the shareholders; in others that it shall be sold and the proceeds divided; in some sale is discretionary with the trustees; and in still others there is no provision on the subject. In some cases the trustees are given discretionary power to sell property, and in others authorization by the shareholders is required. Some of the trusts in which testator held shares had considerable sums of money on hand at the time of his death to be invested in real estate, for which contracts had been made. *Held*, that under the law of Massachusetts, as settled by decision, the testator's interest as a shareholder in said trusts, in so far as their property consisted of real estate, was not personal property, but was an equitable interest in real estate, and was not subject to legacy tax, under War Revenue Act June 13, 1898, c. 448, § 29, 30 Stat. 461, and that all money held by such trusts to be invested in real estate, either by the fundamental agreement or by contracts made, was to be considered real estate by equitable conversion.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 11, 12; Dec. Dig. ⊙⇒8.]

**2.** PROPERTY ⊙⇒4—REAL OR PERSONAL PROPERTY—SHARES IN REAL ESTATE TRUST—EFFECT OF DECLARATION OF PARTIES.

A provision in the fundamental agreement of some of such trusts that the shares shall be personal property or that the shareholders shall have no legal or equitable interest in the trust property is ineffective to change the nature of their interest, as declared by the courts of the state.

[Ed. Note.—For other cases, see Property, Cent. Dig. §§ 4-6; Dec. Dig. ⊙⇒1.]

**3.** CONVERSION ⊙⇒15—EQUITABLE CONVERSION—TIME OF CONVERSION.

When a conversion of real estate into personal property or personal property into real estate, directed by a will, deed, or other instrument, will be deemed in equity to have been effected, depends on the intention, as manifested in the instrument. If it directs the conversion to be made at a specified time, or on the happening of a particular event which may or may not happen, it will be deemed to have taken place only at such time or on the happening of such event; otherwise the general rule is that it will be deemed to have taken place on the death of the testator or on the execution of the deed or other instrument.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28-37, 52; Dec. Dig. ⊙⇒15.]

At Law. Action by Schuyler S. Bartlett, executor, against James D. Gill, Collector of Internal Revenue. Judgment for plaintiff.

Tyler & Young, of Boston, Mass., for plaintiff.

The United States Attorney, of Boston, Mass., for defendant.

BINGHAM, Circuit Judge. [1] This action is brought by Schuyler S. Bartlett, executor of the will of Henry Lee, late of Brookline, Mass., deceased, against James D. Gill, Collector of Internal Revenue for the Third District of Massachusetts, to recover approximately $10,000 of a legacy tax paid to the defendant under the War Revenue Act of June 13, 1898 (30 Stat. at Large, p. 464, c. 448). The case is here upon an agreed statement of facts with authority in the court to draw such inferences from the agreed facts as may be warranted.

The tax paid by the plaintiff amounted to $42,724.27. Of this the sum of $14,351.68 has been returned to him, leaving a balance in the hands of the government of $28,372.59. This sum constitutes the tax

assessed upon legacies to the testator's four children; each child being given a specific legacy and a life estate. A part of the property which the testator willed to his children consisted of shares in 15 so-called real estate trusts organized in the commonwealth of Massachusetts for the purpose of holding, managing, improving, selling, and leasing real estate located in the commonwealth and, in some of the trusts, personal property as well. The number of shares and the value of them in the respective trusts as assessed were as follows:

| | | | | |
|---|---|---|---|---|
| No. 1. | 250 | shares | South Street Trust, 50% paid | $ 12,500 |
| No. 2. | 20 | " | City Associates | 10,000 |
| No. 3. | 400 | " | India Street and Atlantic Avenue Land Trust | 9,000 |
| No. 4. | 250 | " | Bromfield Building Trust | 25,000 |
| No. 5. | 2,500 | " | Commonwealth Land Trust | 15,000 |
| No. 6. | 216 | " | Boston Real Estate Trust | 270,000 |
| No. 7. | 100 | " | India Street and Atlantic Avenue Building Trust | 10,000 |
| No. 8. | 50 | " | Lenox Street Building Trust | 5,000 |
| No. 9. | 50 | " | Huntington Avenue and St. Botolph Street Land Trust | 5,000 |
| No. 10. | 70 | " | Sears Street Building Trust | 7,000 |
| No. 11. | 210 | " | Bedford Building Association | 300,000 |
| No. 12. | 311 | " | Union Building Association | 311,000 |
| No. 13. | 1,000 | " | Municipal Real Estate Trust | 100,000 |
| No. 14. | 500 | " | Hotel Trust (Tremont, Lagrange, and Tamworth Streets) | 50,000 |
| No. 15. | 500 | " | Tremont Building Trust | 55,000 |

The question presented for consideration is whether the interests of the shareholders in these several real estate trusts were real or personal property, or partly real and partly personal, depending upon the nature of the property held in trust, for, to the extent that they were personal property, it is conceded that they were taxable under the provisions of section 29 of the War Revenue Act, which reads as follows:

"That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this act, from any person possessed of such property, either by will or by the intestate laws of any state or territory, * * * shall be, and hereby are, made subject to a duty or tax, to be paid to the United States, as follows."

The plaintiff's contention is that these shares were equitable interests in the property held by the trustees at the time of Mr. Lee's death, and that, to the extent the property of the trusts consisted of real estate, the tax thereon was illegally assessed, and, having been paid under protest, he is entitled to recover it back in this action.

The trust agreements differ in many particulars. Their general plan and purpose, however, are similar. Persons owning undivided interests in certain real estate, or desiring to associate together for the purpose of investing in real estate, in the former case convey the property to trustees, and in the latter pay their money to trustees for the purpose of investing the same in such property; and in either case they receive back from the trustees certificates for shares evidencing their interests in the trust. A shareholder is permitted to trans-

fer his shares at any time without the consent of the other shareholders, and it is provided that a transfer of shares, or the decease of a shareholder, shall not terminate the trust. Provision is made to the effect that neither the trustees nor the shareholders shall be individually responsible for the debts of the trust; that all contracts made by the trustees shall refer to the trust agreement; and that parties so contracting with the trustees shall look only to the property and assets of the trust. The trustees are made the active managers in conducting the business of the trust, but certain powers, varying in degree, are vested in the shareholders which they may exercise by vote at meetings of shareholders or by writings signed by the required proportion of shareholders, and have reference to controlling or directing the business to be done by the trustees, to the removal of trustees, the amendment or alteration of the trust agreement, and the termination of the trust. All of the trust agreements, except one, fix a time within which the trusts shall terminate, and in all of them a certain prescribed number of shareholders may terminate the trust at any time by vote in a shareholders' meeting or by a writing signed by a designated number of them. The provisions as to whether the property shall be conveyed to the shareholders or sold by the trustees and divided among them upon final termination of the trust, or when terminated by the action of the shareholders, vary. In some of the agreements the trustees have discretionary power to sell the trust property during the continuance of the trust without procuring the consent of the shareholders; in others they have that right on procuring the consent of the shareholders; and in others no provision is made for sales, except on special authorization of the shareholders.

Attention has been called to certain cases decided by the Supreme Court of Massachusetts, in which similar agreements were considered, and in some of which it was held that the associations provided for were partnerships and in others trusts; there being in Massachusetts no statute authorizing the creation of such institutions. In Williams v. Milton, 215 Mass. 1, 102 N. E. 355, the decisions are reviewed in which that court has held that some of the agreements constitute partnerships, and others trusts. That case involved the assessment of a tax upon property. Under the law of Massachusetts, real estate, whether held by a partnership or a trust, is taxable in the city or town in which it is located; but the personal property of a partnership is taxable to the partnership in the city or town in which it does business, and not to the partners in the cities or towns in which they reside, while in a trust the personal property is taxable to the trustees in the cities or towns in which the beneficiaries reside, if they reside in the state, according to their interests, otherwise to the trustees in the cities or towns in which the trustees reside. It became, therefore, necessary in that case for the court to determine whether the trust agreement under which the property was held constituted a partnership or a trust; but the decision does not lend any aid in determining whether the interest of a shareholder is personal property or real estate.

The government particularly relies upon the case of Kennedy v. Hodges, 215 Mass. 112, 102 N. E. 432, as holding that the sharehold-

er's interest under such agreements is personal property. In that case the trustees resided in Massachusetts, and the trust agreement was entered into, and the business of the trust was conducted in that state. The question was whether the executors, who had taken out ancillary administration in Massachusetts, should account in the probate court of that state for shares in the trust which a shareholder, who was domiciled in California, owned at the time of his death. The case does not state what the nature of the property was that was held in trust, whether real estate or personal property, and, if real, where it was situated; but it is conceded by counsel that a large per cent. of the property was real estate located in states other than Massachusetts, and that the balance was personal property. The terms of the trust agreement under which the property was held by the trustees is not disclosed. It does not appear whether the trustees had any authority to sell and dispose of the real estate belonging to the trust, and, if they had authority to sell the real estate, whether that authority was discretionary or imperative. It seems to have been assumed by the court and conceded by counsel in that case that the interest represented by the shares was personal property, and, on this assumption, the court held that, inasmuch as the trustees lived in Massachusetts and conducted the business there and the shares were there transferable, the situs of the shareholder's interest was in Massachusetts. This case, therefore, is in no way determinative of the nature of the shareholders' interest in associations of this character.

In the case of Kinney v. Treasurer and Receiver General, 207 Mass. 368, 93 N. E. 586, 35 L. R. A. (N. S.) 784, Ann. Cas. 1912A, 902, shares in a Massachusetts real estate trust were pledged as security for a note. The pledgee lived in New Hampshire, and, at the time of his death, the note and shares were in New Hampshire. The trustees lived and did business in Massachusetts, and the property of the trust was almost entirely real estate situated in Massachusetts; the only other property in the trust being two shares in the Calumet & Hecla Mining Company. The inheritance tax law of Massachusetts imposed a tax upon the devolution of all property within the jurisdiction of the state, real and personal, or any interest therein, whether belonging to inhabitants of the commonwealth or not, and the question was whether the shares held by the New Hampshire decedent were properly within the jurisdiction of the commonwealth, in reference to the tax upon the succession. The court, in discussing the question of the nature of the property held by the trust, evidently regarded the two shares of stock in the Calumet & Hecla Mining Company as negligible. It said:

"The note secured by the conveyance of the deposit book (certificate) in the Cambridge Real Estate Associates differs from the others only in the nature of the property conveyed as security. This property was a valuable interest in real estate in Cambridge, the legal title to which was held by trustees. The testator held an equitable interest in it as security for the note at the time of his death. This interest passed under the will, for the use of his legatees at the time of his death. * * * It passed to the executor for purposes of administration, to be turned into money which was to be paid by the executor to those for whose use it was collected. Although the testator held only an equitable interest in this real estate instead of a legal interest, we

perceive no difference in principle between the passing of this interest in succession and the passing of his interest under a mortgage held in like manner as security for a debt. We are of opinion that all this property is subject to the tax upon succession prescribed by our law."

As the property held by the trust, so far as was material in considering the question of taxation, was regarded by the court as real estate, and as it was held that the shareholder's interest in that property was an equitable interest in real estate, this decision would seem to be of importance in reaching a conclusion in this case. It does not appear, however, whether the trust agreement did or did not contain an imperative direction to the trustees to sell and dispose of the real estate during the continuance of the trust, and if it did not, and no such intention could be gathered from the stipulations therein contained, there can be no doubt but that the conclusion reached that the interest of the shareholder was an equitable interest in real estate was correct.

In Peabody v. Treasurer and Receiver General, 215 Mass. 129, 102 N. E. 435, it was held that, whether the trust agreements in the various trusts there considered constituted the shareholders cestuis que trustent or partners, it was—

"true of all of them that their rights are equitable interests in tangible property within this commonwealth. While the legal title is in the trustees, their ownership is fiduciary, and the certificate holders are the ultimate proprietors of the property, which is held and managed for their benefit, and which must be divided among them at the termination of the trust. Their rights constitute, not choses in action, but a substantial property right."

It appears that No. 1—the South Street Trust—at the date of Mr. Lee's death, had $50,000 worth of real estate and $308,000 worth of personal estate, substantially all of which was cash or its equivalent, and that the association had then entered into a contract to purchase certain land for which it had agreed to pay $511,000. To the extent that the $308,000 of personal estate consisted of cash or its equivalent, it is to be considered as held and devoted to the payment of the $511,-000 which the South Street Trust had agreed to pay for the land, and as equitably converted into land at the time of Mr. Lee's death. It is a fundamental principle that equity regards that as done which ought to be done, and that in the case of a contract for the purchase of real estate, if all the terms are agreed upon, and the purchaser dies pending performance of the contract, the amount of the purchase price is regarded as real estate for the purpose of descent and goes to his heirs, and the interest of the seller, if he dies pending performance, is regarded as personal property and goes to his personal representatives or next of kin. 1 Jarman on Wills, c. 19, § 1. So that, in this case, the cash which the South Street Trust had on hand and was obligated to pay for the land at the time of Mr. Lee's death will be regarded as converted into real estate at that time, unless it must be treated as reconverted into personal property by reason of certain stipulations in the trust agreement and hereafter to be considered.

It also appears that No. 13—the Municipal Real Estate Trust—held, at the time of Mr. Lee's death, real estate to the value of $756,000 and cash of $181,000, which had been collected from the subscribers to be

applied in the purchase of a parcel of real estate to cost $450,000; and that in the trust agreement it was stipulated that the "trustees shall use all money coming to them as such, except as hereinafter provided, for the purchase or improving of real estate in the said commonwealth of Massachusetts;" and the exception was that they "may establish a reserve fund for future contingencies and for that purpose may set aside annually a sum not exceeding 10 per centum of the gross annual income of the trust property." It would seem that the reserve fund was to come out of the gross income and would have nothing to do with the sum of $181,000 collected by the trustees to be applied in the purchase of the real estate to which it was subsequently devoted; and that this was an express direction to invest this sum in real estate and would operate as an equitable conversion of the cash into real estate. I am therefore of the opinion that this fund is to be considered as real estate the same as the cash item in the South Street Trust.

[3] Pomeroy, in his book on Equity Jurisprudence, vol. 3 (2d Ed.) pp. 1766–1768, in discussing the question of equitable conversion, says:

"The only essential requisite is an absolute expression of an intention that the land shall be sold and turned into money, or that the money shall be expended in the purchase of land. If this intention is sufficiently expressed, the circumstance that the land has not yet been sold and turned into money, or that the money has not yet been laid out in land, is the very condition of fact in which the doctrine of conversion comes into play, to which the maxim, 'Equity regards that as done which ought to be done,' applies. The true test in all such cases is a simple one: Has the will or deed creating the trust absolutely directed, or has the contract stipulated, that the real estate be turned into personal or the personal estate be turned into real? * * * The whole scope and meaning of the fundamental principle underlying the doctrine are involved in the existence of a duty resting upon the trustees or other parties to do the specified act, for, unless the equitable ought exists, there is no room for the operation of the maxim, 'Equity regards that as done which ought to be done.' The rule is therefore firmly settled that, in order to work a conversion while the property is yet actually unchanged in form, there must be a clear and imperative direction in the will, deed, or settlement, or a clear imperative agreement in the contract, to convert the property; that is, to sell the land for money, or to lay out the money in the purchase of land. If the act of converting (that is, the act itself of selling the land or of laying out the money in land) is left to the option, discretion, or choice of the trustees or other parties, then no equitable conversion will take place, because no duty to make the change rests upon them. It is not essential, however, that the direction should be express, in order to be imperative; it may be necessarily implied."

See, also, the following cases: Wheless v. Wheless, 92 Tenn. 293, 21 S. W. 55; White v. Howard, 46 N. Y. 144, 162; Sweeney v. Horn, 190 Pa. 237, 42 Atl. 709; Hunter v. Anderson, 152 Pa. 386, 25 Atl. 538; Craig v. Leslie, 3 Wheat. 563, 4 L. Ed. 460; Janes v. Throckmorton, 57 Cal. 368; Bleight v. Manufacturers', etc., Bank, 10 Pa. 131; Neely v. Grantham, 58 Pa. 433; 9 Cyc. 828.

Whether, in the case of wills, the conversion shall be deemed to take place on the death of the testator, or in the case of deeds and other instruments inter vivos from the date of their execution, or at some later period, depends upon the intention, as manifested by the provisions of the will, deed, or other instrument. If the will, deed, or other instrument provides in terms that the sale shall be made at some speci-

fied future time, or creates a trust, with direction to sell only on the happening of a designated event, which might or might not happen, then the conversion would only take place on its occurrence; otherwise the general rule is that real estate will be deemed converted into personalty as of the date of the death of the testator or execution of the deed or other instrument. Savage v. Burnham, 17 N. Y. 561; De Wolf v. Lawson, 61 Wis. 469, 478, 21 N. W. 615, 50 Am. Rep. 148; Underwood v. Curtis, 127 N. Y. 523, 533, 534, 28 N. E. 585; Moncrief v. Ross, 50 N. Y. 431; 3 Pomeroy, Equity Jur. (2d Ed.) § 1162.

In the 15 trust agreements here under consideration, provision is made in 11 of them, to wit, Nos. 1, 2, 4, 5, 6, 8, 10, 11, 13, 14, and 15, for a termination of the trusts 20 years after the death of the last survivor of certain designated persons; and of these, in Nos. 1, 8, 14, and 15, at the expiration of the trust, discretionary power is vested in the trustees to sell, while in Nos. 2, 5, 6, 11, and 13 the provision as to sale at that time is imperative. In three other trusts, Nos. 3, 7, and 9, provision is made for the termination of the trusts at the expiration of 20 years from their date. In two of these, Nos. 3 and 7, the power of sale vested in the trustees on final termination is discretionary, while No. 9 contains no provision for sale or as to how the division shall be made; and No. 12 contains no provisions as to the duration of the trust and final disposition of the property.

It is thus seen that in accordance with the rule above laid down, as to such of the trusts as contain provisions for final termination and distribution, whether they were imperative or discretionary is unimportant, so far as determining the character of the property represented by the shares at the time of Mr. Lee's death, for at that time the period of termination and conversion in none of them had arrived. It therefore becomes important for us to ascertain whether the trust agreements contain provisions of an imperative character directing a sale of the real estate which would become operative from the date of the execution of the agreements or from the time of Mr. Lee's death.

From an examination of the various agreements, it appears that in seven of them, to wit, Nos. 1, 4, 8, 11, 12, 14, and 15, no power is vested in the trustees to sell during the continuance of the trust, and that no sales can be made by them, except when specially authorized by a vote of the shareholders or a writing signed by the requisite number giving such authority; and that in eight of the trusts, Nos. 2, 3, 5, 6, 7, 9, 10, and 13, the trustees are vested with discretionary power to sell, but in these cases authority is reserved to the shareholders to deprive the trustees of the exercise of their discretion by annulment of the power.

I am of the opinion, therefore, that none of the trust agreements contain an imperative direction to the trustees to sell the trust property during the life of the trusts, and that the real estate held in the several trusts was not equitably converted into personal property upon the execution of the trust agreements or at Mr. Lee's death.

[2] It has been suggested that inasmuch as the trust agreements, Nos. 9, 11, and 12, contain provisions to the effect that the shareholders should have no legal or equitable interest in the trust property

indicates that the right of the shareholders under the trust agreements is nothing more than a mere chose in action. But, as we have seen, it has been held by the Massachusetts court that the shareholders' interest is not a mere chose in action, but an equitable interest in the corpus of the trust, and it does not seem to me that the shareholders' right under agreements Nos. 9, 11, and 12 should be held to be otherwise. In No. 9 the shareholders have reserved to them power to control the trustees in the sale and disposition of the property; they have the right to instruct the trustees, to remove them, to elect new ones in their places, to alter and amend the trust, to terminate it, and, having terminated it, to order a conveyance to themselves. In No. 11 the shareholders have reserved to themselves the right to authorize a sale or mortgage of the property, to rebuild, to remove the trustees, and to terminate the trust when the property shall be conveyed to the shareholders. And in No. 12 the shareholders may authorize sales, in which case the trustees are required to pay to them, after deducting expenses, the proceeds of the property; they also have the right to authorize a mortgage upon the property, and to rebuild; they can remove the trustees, terminate the trust, and, having terminated it, require a conveyance of the property to them. Under such circumstances, it cannot reasonably be said that they have no right, title, or interest in the property, and that their interest as shareholders is a mere chose in action.

It is also contended that, inasmuch as in Nos. 3, 7, 9, 11, and 12 there is a provision that the shares shall be personal property, this manifests an intention on the part of the creators of the trust to imperatively direct the trustees to sell the real estate. The only logical bearing this provision can have is upon this question of intention, for it is plain that the mere declaration of the creators of the trust that real estate or an equitable interest in real estate shall be considered as personalty will not give it that nature. You cannot impress upon real estate the character of descendibility according to the rules applicable to personal estate without directing the real estate to be sold. Attorney General v. Mangles, 5 M. & Wols. 120, 129, 133, 135, 136. But in these particular trusts, when all their provisions are taken into consideration, there can be little, if any, doubt that the power of sale intended to be vested in the trustees, where they were given the power at all, was discretionary. In some of them they were not even given the power, except on the special authorization of the shareholders. In Nos. 3 and 7 the trust was to continue for 20 years, unless sooner terminated, and the trustees were authorized to improve, lease, or sell the real estate. Their attempt, however, to do any of these things was subject to the control and direction of two-thirds of the shareholders, and it was expressly provided that:

"The trustees shall in no case be required to wait or ask for instructions, but they may in all cases act according to their discretion, unless instructions had been received by them signed as aforesaid."

This indicates that, so far as they had any powers vested, in them with reference to these various matters, they were discretionary. In No. 9 the trust was to continue for 20 years, unless sooner termi-

nated, and the trustees had the power to mortgage, to lease the whole or any part of the real estate for terms not exceeding 20 years, and to improve or sell it subject to the instructions of the shareholders. In Nos. 11 and 12 the trustees had authority to hold, manage, lease, and improve the real estate, but had no authority to sell, mortgage, or rebuild without a vote of the shareholders permitting them to do so. It seems to me, therefore, that the creators of these trusts, by inserting the provision that the shares should be considered as personalty, did not intend that the direction to the trustees to sell, where such direction was given, should be regarded as imperative, and certainly they could not have had such an intention in the trust agreements, where they inserted this provision, but vested no authority in the trustees to sell. The clause was inserted rather as an attempt to have an interest in real estate treated as personalty, without providing for a conversion, which, as we have seen, they could not do.

A further contention is made that in the trust agreements the parties have provided that the shares shall be assignable like shares of stock in a corporation, without complying with the formalities necessary for a conveyance of real estate, and that the shares are therefore personal property. But, as we have seen, they represent equitable interests in the corpus of the trust, and, that being the case, their character is determined by the nature of the corpus, and, if the corpus is real estate, it would seem that their transferability would depend upon the law governing the transfer of interests in real estate in the place where the real estate was situated, in the absence of legislative authority making special provision for their transfer.

I am therefore of the opinion that, to the extent the corpus of the property represented by the shares was real estate and cash directed or agreed to be invested therein, the tax assessed under the statute here in question was illegal, and that the plaintiff is entitled to recover the tax paid by him thereon, with interest at 6 per cent. from the date of payment.

In the agreed statement of facts, it is stipulated that:

"If the court shall hold that said shares were in part real estate and in part personal property, then this case, unless the parties hereto can agree as to the amount in which the plaintiff should in such event have judgment, may be referred to a master to determine said amount."

The ascertainment of the amount, with interest, for which judgment should be entered, will be referred to a master to determine, unless the parties agree thereon within ten days from the filing of this opinion.