*W. G. MAXWELL et al. v. R. BARRINGER..

*Trust and Trustee—Statute of Limitations—Powers—Parties—
Tenants in Common.*

In 1870 defendant purchased land at sale under execution and took the
Sheriff's deed therefor, upon which he endorsed, under seal, an
agreement that he held the land for the joint benefit of one M.
and himself, subject to the condition that the lands were to stand
as security for a debt due himself and then a debt to one W., and
after payments of purchase-money any profits realized were to be
equally divided between M. and himself. M. died intestate before
all the lands were sold, when defendant sold as trustee at public
sale for a fair price, and the purchaser failing to make payment
reconveyed to defendant, who settled with M.'s administrator,
accounting with him for the share to which M. would have been
entitled. In an action by M.'s heirs at law for an account and sale
and partition: *Held*—

1. That defendant and M., by virtue of the agreement endorsed on
Sheriff's deed, became equitable tenants in common of the lands,
and upon M.'s death his estate descended to his heirs at law.

2. That the defendant had no power to make the sale of lands after M.'s
death, and his attempted sale was void, and the settlement with
and payment to the administrator were not binding on the heirs
of M.

3. That the defendant was the trustee of an express trust, and the stat-
ute of limitations did not bar plaintiffs' cause of action.

4. That M.'s administrator was not a necessary party to the action,
though defendant was entitled to have him brought in if he so
desired.

CIVIL ACTION, tried at August Term, 1891, of MECKLEN-
BURG Superior Court, *Hoke, J.*, presiding.

On the 2d day of July, 1870, certain lands belonging to
J. J. Maxwell were sold by the Sheriff of Mecklenburg
County under execution, when the defendant was the last

*AVERY, J., did not sit on the hearing of this appeal.

and highest bidder, at the sum of $2,775, to whom the Sheriff made deed, upon which the defendant made the following endorsement:

"I, Rufus Barringer, hereby agree with F. H. Maxwell, that I hold the lands herein described for the joint benefit of myself and said F. H. Maxwell, subject to the following terms and conditions, to-wit: First, said lands are to stand security for a note of fourteen hundred and eighty-six and sixty-nine one-hundredths dollars ($1,486.69) of this date, given by Maxwell to myself with eighteen per cent. interest until paid, and to secure a note of $300 to J. H. Wilson of this date, and then the said lands to stand for the balance of the purchase-money so paid and receipted for by said Maxwell, and, if any profits are realized over and above these sums, the same are to be equally divided between myself and the said F. H. Maxwell."

RUFUS BARRINGER. [Seal.]

Sometime thereafter, the defendant and F. H. Maxwell sold and conveyed a portion of the land to one Selby.

F. H. Maxwell died intestate in 1874, leaving plaintiffs his heirs at law, and John A. Young was appointed his administrator.

In the autumn of the last-named year, the defendant, in pursuance of an understanding with the heirs at law, or the greater number of them, and with the administrator, advertised the unsold portion of the land for public sale; the sale was made and the land bought by one Jarvis Maxwell, the agent of the parties in interest, under an agreement that he was to run up the bidding to a price which was thought to be a fair price, and if it was knocked down to him, he was to take it, pay the purchase-money, and make what he could out of it, or, if he preferred, defendant was to take it off his hands at his bid. He took a deed from defendant,

as trustee, and, after trying to resell, reconveyed to defendant, who charged himself with the purchase-money, and subsequently settled with the administrator of F. H. Maxwell for the amount supposed to be due his intestate. The defendant was in possession from the time of his original purchase up to the beginning of this action. Jarvis Maxwell's deed to defendant was made 19th of November, 1874.

The plaintiffs, in October, 1889, made demand upon defendant for a settlement of the trust, but defendant, alleging that the settlement had been made with the administrator, as hereinbefore stated, declined to recognize their demand, and this action was instituted to compel a settlement and a sale of the land and partition of the proceeds.

The following issues were submitted to the jury:

1. Was there a sale of the land by the defendant, R. Barringer, in November, 1874, and a conveyance of the property to Jarvis Maxwell?

2. Was there a settlement between R. Barringer and the administrator of F. H. Maxwell in which defendant accounted for the value of Maxwell's interest in the property?

3. Was the price for which the land was sold, and for which defendant accounted, a fair value for the land?

4. Is plaintiff's claim barred by the statute of limitations?

5. In the above settlement was the purchase-price of the alleged sale accounted for by defendant?

The defendant moved to dismiss the action, upon the grounds that the plaintiffs, suing as heirs of F. H. Maxwell, had no right to maintain the action, the administrator of F. H. Maxwell being the only person who had a right to call defendant to account for his interest in the matter in controversy, and that, at any rate, the administrator of F. H. Maxwell was a necessary party, and that it was not proper to submit any issues to the jury until the administrator was in Court. His Honor overruled this motion. Defendant excepted.

His Honor instructed the jury to answer No to the first and fourth issues, and to answer the other issues Yes. His Honor charged that the statute of limitations did not apply, as it was an open and express trust. Defendant excepted to the instructions as to first and fourth issues.

The defendant moved for judgment upon the issues so found under the instruction of his Honor, that the plaintiffs recover nothing by this action and for costs. This motion his Honor refused, and defendant excepted.

The defendant then moved for a new trial, for the reason that his Honor had erred in directing the jury to answer No to the first and fourth issues.

His Honor having refused the motion submitted for a new trial upon the first and fourth issues, the defendant moved for a new trial upon all the issues, because of error in the instruction given upon the first issue and upon the fourth issue.

This motion was also refused, and the defendant excepted. There was judgment for plaintiffs. To this judgment defendant excepted and appealed.

*Mr. C. W. Tillett*, for plaintiffs.
*Mr. P. D. Walker*, for defendant.

SHEPHERD, J.: The plaintiffs are suing as the heirs at law of F. H. Maxwell, and they pray that an account be stated, that certain land be sold, and that the proceeds be divided between them and the defendant according to their respective interests.

It is insisted by the defendant that the said F. H. Maxwell had no interest in the land that was descendible to the plaintiffs as his heirs at law, and that if he had such an interest it was converted into personalty by virtue of an alleged sale made by the defendant, and that he has fully accounted and

settled with the administrator of said Maxwell for the proceeds of the same.

(1.) We will first consider the nature of the interest which F. H. Maxwell acquired by virtue of the writing endorsed under the hand and seal of the defendant on the back of the Sheriff's deed. It is there expressly declared that the defendant holds the land for the joint benefit of himself and Maxwell, but it is "to stand as a security" for a note of $1,486.69 and interest, given by Maxwell to the defendant and also "to secure a note of $300 to J. H. Wilson of this date, and then the land to stand for the balance of the purchase-money so paid and receipted for by said Maxwell."

We are very decidedly of the opinion that this vested an equitable estate in common in Maxwell, the land being charged with the payment of the indebtedness mentioned. It is true, that it is provided that "if any profits are realized over and above these sums, the same are to be equally divided between (the defendant) and F. H. Maxwell," but we are unable to perceive how the addition of these words can have the effect of changing the character of such equitable estate. In view of the context, the word " profits " may well be construed to mean such surplus as may remain, should it be necessary to make a sale to satisfy the said indebtedness. The case of *Smith* v. *Walser*, 2 B. & C., 401, cited by counsel, is not in point. There, A, a merchant, and B, a broker, agreed that the latter should purchase goods from the former, and in lieu of brokerage should receive for his trouble a certain proportion of the profits arising from the sale, and should bear a proportion of the losses. It was held that this did not vest in B any share in the property purchased or in the proceeds of it. *Bailey, J.*, remarked that if A had agreed that B should have "that portion of the property itself, it would no doubt have become the joint property of the two." In our case, the land seems to have been purchased by the defendant Maxwell, and there is, as we have

seen, a declaration of trust that the defendant is to hold the *land* for their joint benefit.

Neither does the case of *Sprague* v. *Bond*, 108 N. C., 382, apply. There, a grantee of an absolute deed orally agreed to sell the land and divide the profits with the grantor. The grantee sold the land, and it was held that oral testimony was admissible to prove the agreement in an action by the grantor for an account of the profits. The Court at the same time declared that such an agreement could not, under the circumstances, be enforced as a trust against the land, because it was within the statute of frauds; but the sale having been voluntarily made by the grantee, a recovery was permitted because it related to the consideration only. The argument which assimilates this case to the one before us, improperly assumes that Maxwell had no enforcible trust against the land, whereas we have seen that he had an equitable estate therein.

Parties owning land in common may agree that the profits, either before or after a sale, shall be equally divided, subject to any charges that they may impose upon their respective interests, but until there has been a conversion, either equitable or legal, their interests must necessarily retain the characteristics of real property, and as such be descendible to their heirs. There is certainly nothing in the declaration of trust that amounts to an equitable conversion; for even if a power of sale had been conferred upon the defendant trustee, there is nothing in the language used, which either expressly, or by implication, makes it his imperative duty to sell, and "the equitable *ought* must exist before there can be any room for the operation of the maxim that equity regards that as done which ought to be done." Pom. Eq. Juris., 3 vol., 1160; *Mills* v. *Harris*, 104 N. C., 626.

(2.) It is insisted, however, that there has been a legal conversion by reason of a sale made by the defendant. We think that His Honor was warranted in instructing the jury

110—6

that there was no sale to Jarvis Maxwell. First, we are of the opinion that the agreement did not vest in the defendant a power of sale. It is very evident that shortly after the transaction the parties did not themselves conceive that such a power existed, as they both joined in a deed conveying a part of the land which they had sold to one Selby. This, however, does not determine the legal question, but is only referred to as showing the natural construction that should be put upon such very general language as that from which the power is said to be implied. It is true, as stated in Perry on Trusts, 766, that no particular form of words is necessary to create a power of sale. "Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without it, will necessarily create a power of sale in the trustee." We find no words here which show such an intention or impose such a duty. All that is said is, that "if any profits are realized over and above these sums, the same are to be equally divided," etc. Nothing is said about a sale, the time when it is to be made, or the terms thereof; and if we are correct in our construction that Maxwell acquired an equitable estate, charged with certain indebtedness, it would be analogous to a mortgage or trust to pay debts which clearly, in this State, could not be foreclosed under such vague language, but would require a decree of Court. The cases of *Council* v. *Averett*, 95 N. C., 131, and *Foster* v. *Craige*, 2 Dev. & Bat. Eq., 209, cited by counsel, do not, in our opinion, sustain the contention of the defendant in favor of a power of sale.

Another reason in support of the ruling of the Court may be found in the fact that there was really no sale to Jarvis Maxwell, as it is plain from the testimony that he bought the land under the direction and as the agent of the defendant, and if it be conceded that there was a delivery of the deed by the defendant to the said Jarvis (which is not at all free from

doubt), and if the naked legal title vested for an instant in him before he reconveyed to the defendant, the latter would still take the land charged with the trusts. Even if a stranger had acquired the legal title with notice, he would take it subject to the trusts; *a fortiori* would the trusts be binding on the trustee who purchased indirectly at his own sale. *Howell* v. *Tyler,* 91 N. C., 207; *Froneberger* v. *Lewis,* 79 N. C., 426; *Sumner* v. *Sessoms,* 94 N. C., 371; *Gibson* v. *Barbour,* 100 N. C., 197.

(3.) It is further contended that although the defendant may have purchased at his own sale, it was only voidable, and that as the proceeds would be personalty the administrator could ratify the sale, and that such ratification and subsequent settlement are a bar to the plaintiff's claim. If, as we hold, an equitable estate in the land descended to the plaintiffs, it cannot be seen how the administrator was entitled to the proceeds. It is sufficient to say, however, in answer to the proposition that, there being no power to sell, the sale was void and not merely voidable, and therefore insusceptible of ratification by anyone.

(4.) The defendant finally insists that the plaintiffs are barred by the statute of limitations. The defendant was the trustee of an express trust, and also an equitable tenant in common with the plaintiffs. His possession was not inconsistent with his relation to the plaintiffs, and there was no actual ouster or exclusive possession for twenty years. *Gilchrist* v. *Middleton,* 107 N. C., 681. Treating him either as a trustee or a tenant in common, the statute would not be put in operation until a demand and refusal, and there was none on the part of the plaintiffs or their ancestor. *Wright* v. *Cain,* 93 N. C., 296; *Davis* v. *Cotten,* 2 Jones Eq., 430; *Huntly* v. *Huntly,* 8 Ired. Eq., 250; *Bruner* v. *Threadgill,* 88 N. C., 361.

(5.) Under the view which we have taken, the presence of the administrator of F. H. Maxwell was not necessary to the determination of the issues submitted to the jury. If, how-

ever, his presence is deemed essential to a proper adjustment of the equities arising upon the accounting, he should, upon the motion of either the plaintiffs or defendant, be made a party. *The Code,* § 189. So far as we are able to see there appears to be no error in the directions given to the referee; but the defendant is not precluded from renewing his exceptions to these upon the coming in of the report.

Upon a consideration of all of the exceptions presented by the defendant, we are of the opinion that there is

No error.