THOMAS J. COYNE, APPELLANT, v. IDA DAVIS, APPELLEE; JAMES A. DONOHOE, INTERVENER, APPELLANT.

FILED OCTOBER 16, 1915.    No. 17810.

1. **Wills:** CONSTRUCTION: DIRECTION TO SELL LANDS: EQUITY. As a general rule, where a testator directs the sale of a specific tract of land for the purpose of paying certain bequests from the proceeds, a court of equity will consider that the conversion of the land into personalty has taken place. The fact that the time of the sale is postponed for a definite term is not material, and the conversion will be held to have been made at the time of the testator's death.

2. ——: ——: REQUEST: VALIDITY. By the will of a man of Swedish parentage, a bequest was made to the "Swedish Mission Society of Chicago, Illinois." No corporation or association of that name existed at the time of the making of the will or of the testator's death, but the evidence shows that a corporation whose proper name is the "Swedish Evangelical Mission Covenant in America" is

commonly known among Swedish people as the "Swedish Mission Society;" that its headquarters are in Chicago, Illinois; that deceased for a time attended a church of such denomination in Omaha, was personally acquainted with a number of its ministers, and for years had taken a Swedish paper published in the interest of such society, *Held*, that the intention of the testator was to make the bequest to the "Swedish Evangelical Mission Covenant in America," and that the same was a valid bequest.

APPEAL from the district court for Holt county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*M. F. Harrington, J. J. Harrington* and *J. A. Donohoe,* for appellant.

*Sullivan & Rait, contra.*

LETTON, J.

This action was brought to quiet the title of plaintiff to an undivided one-half interest in 160 acres of land, and praying for partition thereof. James A. Donohoe intervened, claiming the other one-half interest, and asked the same relief as plaintiff. The defendant, Ida Davis, claimed title to the entire 160-acre tract. The court found in her favor, quieted the title in her, and dismissed the action of both plaintiff and intervener. Plaintiff and intervener claimed title to the property by conveyances from David Johnson and Hannah K. Hammer, who were the children and heirs at law of one Solomon Johnson, who died testate on the 15th day of March, 1900, in Holt county, Nebraska. Johnson, together with his wife, Ida, lived upon the land in controversy as their family homestead. Some time after his death his widow, Ida, intermarried with one Davis, now deceased. She continued to remain in possession of the land, and is the principal defendant in the suit. By his will, which was duly probated and allowed, Solomon Johnson gave his wife his furniture and household goods, directed her to use $250, which he had in the bank, toward paying off a $400 mortgage upon the farm, and to sell enough of the personal property to make up the balance due on the mortgage. He provided that she should

place monuments upon his grave and upon that of his first wife. The remaining portion of the will, the construction of which is determinative of the issues involved in this case, is, as follows:

"Fifth. I am the owner of the southwest quarter of section fourteen (14) in township twenty-eight (28) north, of range nine (9) west. I want my wife, Ida Johnson, to have and to hold said lands with all their belongings for her own use for a period of five years from the first day of January, 1901, to the first day of January, 1906, together with the residue of my personal property, and pay all taxes which may become due on said lands. After January first, 1906, I wish my wife, Ida Johnson, to sell said lands and to have and to hold for herself and her heirs one-third of the proceeds from such sale of all my property.

"Sixth. To each of my granddaughters, Ida and Frida Hammer, I give and bequeath the sum of one hundred and twenty-five dollars.

"Seventh. I give and bequeath to my son David Johnson, the sum of one hundred dollars.

"Eighth. I give and bequeath to the Lambert Presbyterian Church as located in Verdigris Township, Holt County, Nebraska, to have and to hold, the sum of fifty dollars.

"Ninth. I give and bequeath to the Methodist Episcopal Church of Page, Nebraska, to have and to hold, the sum of fifty dollars.

"Tenth. The residue of my property or the residue of the proceeds of the sale thereof, I give and bequeath to the Swedish Mission Society of Chicago, Illinois, to have and to hold, for whatever purpose they may see fit.

"Eleventh. It is my will that none of these bequests be paid until all my property shall be sold.

"Twelfth. I hereby make my wife, Ida Johnson, executrix of this my last will and testament."

The executrix paid all the bequests.

Plaintiff's contention is that the Swedish Mission Society was at the time of the death of Johnson a foreign corporation and incompetent to take or receive real estate

in Nebraska, or was not in existence at that time; that, this being so, the interest devised to that society passed by inheritance to the heirs of the testator, to whose interests the plaintiff and intervener have succeeded by purchase; and that they may elect to take the land instead of its proceeds. Plaintiff also attacks the validity of a sale of the land made by defendant to one Woodruff, who reconveyed to her. Defendant insists that the bequest to the Swedish Mission Society was in fact intended to be made by the testator to the Swedish Evangelical Mission Covenant in America, an Illinois corporation; that such corporation was commonly known among Swedish people as the "Swedish Mission Society of Chicago, Illinois;" and that at the time of the death of the testator it was in being and competent to take a bequest of personalty. She further contends that by the terms of the will an equitable conversion was made of the real estate into personalty; that she has sold the land and paid all debts, legacies and bequests under the will. The reply pleads that defendant elected to take the property as land, and not as personalty; that it has never been sold; and that she is now holding it under the homestead laws of Nebraska. The Swedish Mission Society made default, and a decree was entered against it, finding it had no interest in the property.

It is clear from the evidence that the sale to Woodruff and the reconveyance were mere colorable and voidable transactions, liable to be set aside at the action of the residuary legatee if dissatisfied.

If an equitable conversion of the land into personalty took place, and a competent legatee was in existence at the time the will took effect, the plaintiff and intervener never had an interest in the land and have no cause of action. On the other hand, if the conversion did not take place at the testator's death, and could not do so until a sale was made, the legal title to the land, not having been disposed of, rested in the heirs, and, no valid sale having taken place, the conveyance from them passed it to the plaintiff and intervener.

The rule seems to be that, when land is imperatively directed to be sold, it is considered as converted into money from the death of the testator. If the executor has the option whether to sell or not, or if he is merely given authority to sell, without being directed to do so, then it remains as real estate until the conversion takes place. *Chick v. Ives*, 2 Neb. (Unof.) 879; *In re Estate of Willits*, 88 Neb. 805; *Harrington v. Pier*, 105 Wis. 485. The fact that the time of making the sale is postponed by the will to some time in the future is not material as affecting the condition of the bequest. Equity regards it to have been the intention of the testator to pass the property to the objects of his bounty as personalty, and, this intention becoming effective at his death, the property will be regarded as being personal property at that time. *Martin v. Sherman*, 2 Sandf. Ch. (N. Y.) 341; *Boland v. Tiernay*, 118 Ia. 59; *Nelson v. Nelson*, 36 Ind. App. 331; *Beaver v. Ross*, 140 Ia. 154, 20 L. R. A. n. s. 65, and note; *Bates v. Spooner*, 75 Conn. 501; *Crane v. Bolles*, 49 N. J. Eq. 373; *Burbach v. Burbach*, 217 Ill. 547; 3 Pomeroy, Equity Jurisprudence (3d. ed.) sec. 1160.

With respect to the claim of the appellant and the finding of the district court that the Swedish Mission Society of Chicago was an organization which existed in South Chicago about 30 years ago, and that it had ceased to exist before the time the will was made, the evidence is substantially as follows: For the plaintiff a witness relates a conversation in which he says that Mr. Johnson told him of a Swedish preacher who had helped him in Sweden, and whom he said he met in Chicago after he came to this country; that the preacher's address was South Chicago; that this preacher had helped him more than his children, and that he was going to will part of his property to him; that he sent him $5 every New Year for the last few years, or for a few years, the witness was not sure which. On cross-examination he testified that he would not say the address was not 81 Clark street, Chicago. He could not give the name of the preacher, but would not say it was not Bjork, Frickman or Wenstrund. He testified he sent

a letter addressed to the Swedish Mission Society at South Chicago and the letter came back. The witness was not familiar with Chicago, and did not know that 81 South Clark street was in the heart of the city. On the other hand, the scrivener who drew the will testifies that Mr. Johnson gave him the name of the organization in Swedish; that he could not understand it, and asked it to be given him in English; that Johnson and his wife spoke together, and then gave him the name as the Swedish Mission Society. The evidence shows that there are 21 religious and charitable corporations incorporated in the state of Illinois using the word Swedish in their title, but that only two use the word Mission as part of the title.

Mrs. Davis, formerly Mrs. Johnson, testified that after their marriage Mr. Johnson and she attended the Swedish Mission church in Omaha; that a Mr. Hultman was the preacher; that the president of the organization was Mr. Bjork, who came to Omaha and preached occasionally; that John Wenstrund was there many times and preached; that Johnson knew Mr. Wenstrund, Mr. Bjork, Mr. Frickman, and Mr. Herpje, the ministers, personally; that for years Johnson took a Chicago paper, named the "Swedish Mission Friend," and that she still takes it; that there were churches of that denomination in Omaha, at Wausa, Nebraska, Fremont, and Des Moines, Iowa; and that among Swedish people it is often called the Swedish Mission Society.

The county judge testified that he wrote to the Swedish Mission Society of Chicago and received an answer from one Herpje, the secretary.

Mr. Wenstrund testified that the organization to which he belonged was often called the Swedish Mission Society; that he frequently received letters addressed in that manner; that the organization carried on home missions, maintained a home for old women in Chicago, and carried on schools in Alaska, and foreign missions in China; that he had known a Solomon Johnson in Omaha who attended church in Omaha at the Swedish Evangelical Mission Covenant church in that city; that the Swedish paper, known

as the "Mission Friend," was at one time owned by the synod to which he belonged, but was afterwards sold, but still circulates among Swedish people as a religious paper and contains news of the church; that the proper name of the corporation is the Swedish Evangelical Mission Covenant in America; that it is often called by newspapers the Mission Covenant or the Covenant, and that the use of the name "Swedish Mission Society" is a very common one among Swedish people. He also testified to receiving as treasurer of the society $31 from the executrix of the estate of Solomon Johnson, deceased, as the residue due to the corporation. As said before if this was incorrect and fraudulent, the society may call the executrix to account.

From a consideration of this evidence, we are satisfied that the proper name of the organization to which Solomon Johnson intended his bequest to go is the Swedish Evangelical Mission Covenant in America, and that the corporation was competent to receive the same. *Second United Presbyterian Church v. First United Presbyterian Church,* 71 Neb. 563. This being the case, the bequest did not lapse and there was no interest left undisposed of by the will. No property, therefore, was inherited by the heirs, and the plaintiff and intervener, who purchased their interests in the estate, received nothing.

The conclusion reached by the district court is right, and its judgment is

AFFIRMED.

HAMER, J., concurring.

I concur with Judge Letton's opinion.

The plaintiff claims to own an undivided one-half interest in the land in controversy and the intervener claims to own the other half. Solomon Johnson, the testator, was the owner of the land at the time of his death. The defendant, Ida Davis, was then his wife. She afterwards married Davis, who has since died. The plaintiff prays to be adjudged the owner of an undivided one-half interest in the land and entitled to the possession thereof, and

he also seeks to enjoin all parties from asserting any title or interest, except James A. Donohoe, the intervener.

The deceased made a will on the 10th day of March, 1900. The defendant, Ida Davis, claims the legal title to all the land and the right of possession. The will makes a bequest to Ida and Frida Hammer, the testator's grandchildren. It also makes a bequest to the Lambert Presbyterian Church of Verdigris, in Holt county, and a bequest to the Methodist Episcopal Church of Page. The tenth clause of the will provides: "The residue of my property or the residue of the proceeds of the sale thereof, I give and bequeath to the Swedish Mission Society of Chicago, Illinois, to have and to hold, for whatever purpose they may see fit." The fifth clause provides: "I want my wife, Ida Johnson, to have and to hold said lands with all their belongings for her own use for a period of five years from the first day of January, 1901, to the first day of January, 1906, together with the residue of my personal property, and pay all taxes which may become due on said lands. After January first, 1906, I wish my wife, Ida Johnson, to sell said lands and to have and to hold for herself and her heirs one-third of the proceeds from such sale of all my property."

The eleventh clause provides: "It is my will that none of these bequests be paid until all my property shall be sold." The twelfth and last clause makes Ida Johnson the executrix under the will. The name of the residuary legatee as it appears in the will is not correct, the true name being "Swedish Evangelical Mission Covenant in America."

The defendant, Ida Davis, conveyed the land by deed to William A. Woodruff for the alleged consideration of $1,200. She signed this deed as "Ida Davis, formerly Ida Johnson, executrix." This deed is dated January 18, 1906, and was acknowledged on the same day. On the 21st day of February, 1906, the said William A. Woodruff and his wife reconveyed the premises by deed to the defendant, Ida Davis. The deed was dated February 21, 1906. It was signed by William A. Woodruff and Sarah Woodruff, and

acknowledged on the same day. These deeds were made without consideration and to convey the land to Ida Davis. It is contended that these conveyances were fraudulent, and that the defendant has had no title to the premises. The residuary legatee makes no claim of this kind. The defendant seems to have paid to the "Swedish Evangelical Mission Covenant in America" the sum of $31 for its interest in the bequest mentioned in the will. The plaintiff and intervener base their alleged title upon the interest of the grandchildren mentioned in the will, and the interest of David Johnson, the testator's son, both of which it is alleged have been conveyed to them. It is shown by the evidence that the bequests mentioned in the will have all been paid by the executrix, and that she settled with the mission society, paying it the sum of $31 for its interest. The plaintiff and the intervener could only receive such an interest from the heirs as they had to convey or transfer, and, it appearing that the defendant paid the bequests made for their benefit, the heirs would not have any thing to convey or transfer, and could not convey or transfer any interest to the plaintiff or intervener. As the heirs were paid the amount of the respective bequests made to them, if there was a fraud practiced it could only have been practiced against the residuary legatee, the "Swedish Evangelical Mission Covenant in America." The society does not complain. It does not appear in the case. It will be seen that the plaintiff and the intervener have no interest in the premises and have never had any interest at any time.

SEDGWICK, J., dissenting.

The majority opinion, in effect, holds that the defendant is entitled to the disputed interest in the land by purchase from the "Swedish Evangelical Mission Covenant in America." The greater part of the opinion is devoted to the question whether that society took anything or was entitled to anything under the will. It was then a serious question whether that society had any interest or

claim against the estate under the will of which she was executrix.

The society made some claims, and while that question was pending the executrix pretended to convey the property to one Woodruff, who immediately reconveyed to her. This had no effect, and the property remained as it was in her hands as executrix. She found that she could buy the unsettled interest of the society for $31. It was worth, if the devise was valid, $4,000, as found by the trial court. If the devise was invalid the interest of the society was worth nothing. To buy it would settle that controversy. There was enough question about the validity of the devise to the society so that it would be the duty of the executrix, in the interest of the estate, to settle the question if she could for $31. As executrix she could not purchase an unsettled claim against the estate for her personal advantage. If she purchased it, it would inure to the benefit of the estate of which she was trustee. It would make no difference whether the claim was for goods sold to decedent or a claim of devise under the will. She could not afterwards say that the claim or devise was valid, and that she was individually the owner of the claim or devise which was of more value than the amount she paid for it.

A court of equity will sometimes adopt the fiction that real estate is converted into personal property. This is done to enable the court to do equity when there is no other way. It has heretofore never been done to enable a fiduciary officer, like an executor or administrator, to settle or purchase a doubtful claim of a pretended creditor or devisee, and so secure for himself the property of the estate which has been in dispute. The discussion as to equitable conversion in this case seems to me to be wholly immaterial.

MORRISSEY, C. J., and FAWCETT, J., concur in this dissent.