## ALMA F. BIRCKNER *v.* ROBERT TILCH, ET AL.

[No. 15, January Term, 1941.]

*Decided February 19th, 1941.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, and COLLINS, JJ.

*T. Emmett McKenzie,* for the appellant.

*Adrain P. Fisher,* submitting on brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

Richard Stein, by his last will and testament dated February 1st, 1933, devised the rest and residue of his estate both real and personal, and mixed, to certain devisees named therein, to them and their heirs and assigns, forever, share and share alike, as tenants in common, and included among the devisees Robert Tilch individually and also Rudolph F. Adler, executor and trustee for the children of Bernard and Edith Tilch until said children reached their majority, and nominated, constituted, and appointed his nephew, Rudolph F. Adler, his executor. On December 9th, 1935, he executed a codicil to the aforesaid last will and testament reciting the death of Rudolph F. Adler and nominating and appointing Robert Tilch as executor aforesaid in place of the said Rudolph F. Adler, with all powers and authority as though he had been originally named as executor.

On the 9th day of November, 1936, the said Richard Stein, unmarried, as party of the first part, executed an agreement under seal with Charles W. Collins, as party of the second part, which contained in part the following: "Witnesseth, that in consideration of the payment of the sum of One Hundred ($100.00) Dollars by the party of the second party to the party of the first part, the receipt

of which is hereby acknowledged, the said party of the first part does hereby agree to sell the hereinafter described property to the party of the second part who hereby agrees to purchase the same within thirty days after the death of the said party of the first part on the following terms, stipulations and conditions hereinafter set forth, the said property being described as follows." The property described is a tract of land consisting of 9.45 acres together with a right of way twelve feet in width in Prince George's County, Maryland. The agreement further provided:

"The said party of the second part agrees to pay to the executor or administrator of the estate of the party of the first part the sum of Nine Thousand ($9000.00) Dollars in cash within thirty days after the demise of said party of the first part, and the executor or administrator of the estate of the said Richard Stein is hereby authorized and directed to execute and deliver to the said Charles W. Collins, his heirs and assigns, a special warranty deed conveying the said real estate to the said party of the second part upon the payment of the aforesaid sum of money, provided, however, that should the said party of the second part his heirs and assigns fail, refuse or neglect to pay the said sum of money within the time prescribed above then, and in that event, the right to do so shall automatically cease and determine at the option of the executor of the estate of the party of the first part upon the expiration of said thirty day period, without any formal notice being given by the executor or administrator.

"It is further understood and agreed by and between the parties hereto that the party of the first part is to occupy, possess and enjoy the said property during his lifetime without interference by the purchaser; that he will pay the necessary State and County taxes to become due upon said property up to the time of his death. Title to the said property is to be a good marketable title, otherwise, the party of the second part is to be refunded the deposit paid hereunder."

The agreement also contained the usual provision binding the heirs, executors, administrators and assigns of the parties thereto.

The said Richard Stein departed this life on or about October 26th, 1937, being seised of the tract of land and two dwelling houses thereon, described in the aforesaid agreement, which passed under the rest and residue clause of his will aforesaid.

On November 12th, 1937, Robert Tilch as executor under the last will of Richard Stein, as party of the first part, entered into an agreement under seal with the said Charles W. Collins, as party of the second part, which provided in part as follows:

"Whereas, on the 9th day of November, 1936, the decedent Richard Stein, and Charles W. Collins, entered into a written agreement for the sale and purchase of 9.45 acres of land, located in Piscataway District, Prince George's County, Maryland, (particularly described in the said agreement by metes and bounds, courses and distances), in which agreement the said Charles W. Collins agreed with the said decedent to purchase said tract of land within thirty (30) days after the death of the said Richard Stein, at and for the sum of Nine Thousand ($9000.00) Dollars, which money was to be paid in cash to the decedent's executor; and,

"Whereas, the said Richard Stein departed this life on or about the 26th day of October, 1937, testate, having duly appointed the said Robert Tilch, executor under his last Will and Testament, the same having been confirmed by the Orphans' Court of Prince George's County, on November 2nd, 1937; and,

"Whereas, the said Charles W. Collins has paid to the said Robert Tilch, executor under the Will of Richard Stein, the sum of Four Hundred Fifty ($450.00) Dollars. In consideration of the payment of the said sum of money, the said Robert Tilch, executor under the Will of Richard Stein, does hereby extend the option to purchase said property until October 27th, 1938, upon the same terms and conditions as contained in said original contract, dated November 9th, 1936.

"It is also understood and agreed by and between the parties hereto that the said party of the second part is to pay to Eleanor Dennison the sum of Six ($6.00) Dollars per month during the period of this agreement, or so long as she is permitted to remain in the dwelling house, located on said property, by the said executor. Should she cease to reside in said house and to look after the same, or should she remove therefrom, then, and in that event, the said payments shall cease and determine. The party of the second part is to pay all the State and County taxes due upon said property for the year 1938, and any insurance premiums becoming due for fire insurance covering said dwelling house; the said agreement dated November 9th, 1936, between the said parties otherwise to remain in full force and effect, and the purpose of this instrument is merely intended to postpone until October 27th, 1938, settlement under the terms of said agreement."

On December 5th, 1939, Robert Tilch as an individual together with some of the other devisees under the aforesaid rest and residue clause of the will of Richard Stein filed a bill of complaint against the remaining devisees under the residue clause of said will and against Robert Tilch, executor and trustee, and against Charles W. Collins, defendants, some of these defendants being residents of Germany. In said bill of complaint were recited the provisions of the aforesaid will, the execution of the agreement by Richard Stein with Charles W. Collins on November 9th, 1936, and filed said will and said agreement as exhibits, and further recited that on the 12th day of November, 1937, Robert Tilch, executor of Richard Stein, entered into the aforesaid agreement with Charles W. Collins extending the option to purchase the aforesaid land and premises until October 27th, 1938, upon the same terms and conditions as contained in the original agreement and filed said agreement as an exhibit. The bill of complaint further alleged as paragraph four: "That the said Charles W. Collins has failed, neglected and refused to comply with the terms of the aforesaid

agreements and declines to exercise either of the options mentioned herein and the sole and only purpose of making the said Charles W. Collins a defendant in these proceedings is to preclude and bar him from making any future claims in connection with the subject matter of this suit, in so far as the aforesaid options are concerned." The bill further alleged as paragraph six: "That the said real estate is not susceptible of partition in kind without material loss and injury to the parties entitled to interest therein, as above stated, and that, in order to make division of the said interests, it will be necessary that said real estate be sold and the proceeds divided among the parties according to their respective interests." The bill prayed that a decree be passed for the sale of said real estate, that the proceeds of said sale be distributed among the parties according to their respective interests and also asked for general relief. This bill was later amended by adding to paragraph four the following words: "That Robert Tilch, executor, duly notified Charles W. Collins that his rights under said contracts were terminated."

An amended answer was filed by one of the defendants, Alma F. Birckner, who had a one-twentieth undivided interest in this property, which recited that the property was subject to a written contract with Charles W. Collins upon which contract a valid and existing right of action may be instituted and successfully prosecuted; that the sale sought in the bill of complaint is neither necessary nor beneficial to the best interest of the heirs concerned; that there is no authority in the will authorizing or contemplating the sale sought in the action; that the devise in the will is defined, modified and qualified by the contract of sale made between the testator and Charles W. Collins and under the terms of which the executor is legally bound and required to enforce the said contract of sale; that the said land is properly regarded as personalty and is not a proper subject for order of sale in this case; that the proposed sale will result in a loss of approximately three thousand ($3000) dollars

to the parties concerned and thereby reduce her share in said land. The amended answer asked the court to dismiss the cause of action and also asked for general relief. An answer was filed by Charles W. Collins which contained the following statement: "Further answering said bill of complaint this defendant says that the original option which he acquired from the said decedent, Richard Stein, as well as the extension thereof, which is mentioned in paragraphs 5, have both expired, and he has no desire nor intention to claim any rights thereunder." None of the other defendants answered, but by testimony and exhibits, it is evident that some of them desired the sale as prayed in the bill of complaint.

After taking testimony, the chancellor passed a decree appointing Adrian P. Fisher, the solicitor for the complainants in the bill, trustee, and after filing bond, to sell the tract of 9.45 acres with the usual provisions, and to bring the money into court to be distributed under the direction of the court. From this decree the appeal is taken by Alma F. Birckner.

The testimony and exhibits show that Charles W. Collins did not pay the Nine Thousand ($9000) Dollars as provided in the agreement of November 9th, 1936, and attempt to take title to the real estate, and informed the exectuor that he was not in a position to buy the property, and that at the request of Collins, Robert Tilch, the executor, without an order from any court, for a consideration of four hundred fifty ($450) dollars, on November 12th, 1937, extended the time of settlement in the agreement above referred to for a period of one year. Further, on or about November 12th, 1938, when time for settlement under the second agreement arived, settlement was not made and the executor made no effort to specifically enforce either contract, and both contracts were terminated and rescinded. The executor was doubtful in his testimony as to whether Collins had paid the taxes and insurance as agreed.

From testimony of Robert Tilch, the executor: "Q. Directing your attention to the Agreement which you

entered into as Executor with Charles W. Collins on November 12th, 1937, I ask you if you recall that Agreement? A. Yes.

"Q. At the expiration of one year, which would have been around the 12th of November, 1938, what, if anything did you do in connection with this Agreement and Mr. Collins? A. I went to see him and ask him if he was going to take the property and he told me he was not in a position to financially handle it on account of the first mortgage on the home being due and to go ahead and sell it. Q. What, if anything, did you tell him then? A. I told him that was all right. Q. Did you tell him the contract was terminated? A. Yes, I did."

Under the Code provision the executor had authority to complete the sale if Collins had complied, but both saw fit to rescind the contract. "The executor or administrator, including the administrator *de bonis non,* of a person who shall have made sale of real estate or leasehold estate and have died before receiving the purchase money, or conveying the same, may convey such real estate or leasehold estate to the purchaser; * * *" (Flack's Code, Art. 93, Sec. 83.) It further appears from the testimony of the executor that six thousand ($6000) dollars is a good price for the property at the present time, as it has depreciated in value. There is not sufficient information in the record to show whether the financial condition of Collins is such as to make a decree of specific performance enforceable, if the executor had decided not to rescind the contract. There is some testimony that Collins may buy the property at the sale decreed by the chancellor below. If it later develops that the executor, Robert Tilch, was negligent and did not act in a faithful and diligent manner in not enforcing the contract, and thereby the estate suffered a loss, he may be required to face the consequences thereof, in some other action. At this time, it cannot be determined whether the estate will suffer loss, by reason of the executor rescinding the contract. The executor did obtain Four Hundred Fifty ($450) Dollars for the option. The

original contract between the testator and Charles W. Collins was rescinded or extended as evidenced by the testimony of the executor, the answer to the bill of complaint filed by Charles W. Collins, and the execution of a later agreement by the executor on November 12th, 1937. The agreement of November 12th, 1937, was rescinded, as evidenced by the testimony of the executor, and the answer filed to the bill of complaint by Charles W. Collins. The executor verbally and by his act acquiesced in the abandonment of both agreements and Charles W. Collins by his answer renounced all his rights in both contracts. As to the legal effect of the agreement made on November 12th, 1937, we are not called upon to decide, as this agreement was rescinded. Both agreements have been rescinded; therefore, specific performance cannot be decreed. Parol evidence is admissible to prove such a rescission by a mutual abandonment. *Gibula v. Sause*, 173 Md. 87, 194 A. 826; *Loughran v. Ramsburg*, 174 Md. 181, 197 A. 804. This court held in *Gibula v. Sause, supra*, 173 Md., at pages 92 and 93, 194 A., at page 828, quoting the case of *Graves v. White*, 87 N. Y. 463, 465, involving a written agreement for the transfer of real estate: " 'The refusal of one party to perform his contract amounts on his part to an abandonment of it. The other party thereupon has a choice of remedies. He may stand upon his contract, refusing assent to his adversary's attempt to rescind it, and sue for a breach, or in a proper case, for a specific performance, or he may assent to its abandonment, and so effect a dissolution of the contract by the mutual and concurring assent of both parties. In that event he is simply restored to his original position, and can neither sue for a breach or compel a specific performance, because the contract itself has been dissolved.' That principle is stated with citation of cases in 66 *C. J.* p. 733, and *Black on Rescission and Cancellation* (2nd Ed.), sec. 526. * * * In *Herzog v. Sawyer*, 61 Md. 344, it was held that a waiver of performance, or the abandonment, of an agreement under seal may be proved by parol evidence."

In the brief and argument, the appellant stresses the fact that by the agreement executed by the testator with Collins, the property, the subject matter of this suit, is equitably converted into personalty and, therefore, not subject to the partition as prayed in the bill of complaint. No power of sale or any implication thereof is contained in the will of the testator and, if equitable conversion exists, it is sustained only by the contract executed by the testator.

The prospective purchaser not having complied with the contract, and the executor and the prospective purchaser having rescinded the contract, in our opinion, the real estate is not equitably converted into personal property. As stated in the case of *Lynn v. Gephart*, 27 Md. 547, at page 563: " 'The inclination of Courts of Equity upon this branch of jurisprudence, is not generally to change the quality of the property unless there is some clear intention or act by which a definite character either as money or as land, has been unequivocally fixed upon it throughout. 2 *Story's Eq. Jur.* sec. 1214. If this intention do[es] not clearly appear, the property retains its original character, there being no equity between the heir and the next of kin in such cases; in construing instruments of this kind, Courts of Equity will regard the substance and not the mere form of the agreement, and give to it the precise effect which the parties intended.' 1 *Story Eq.* sec. 791; [*Craig v. Leslie*], 3 Wheat. [563], 577 [4 L. Ed. 460]." "A contract of sale, if all the terms are agreed upon, also operates as a conversion of the property, the vendor becoming a trustee of the estate for the purchaser, and the purchaser a trustee of the purchase money for the vendor. In order to work a conversion, the contract must be valid and binding, free from inequitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser. The fact that the contract of purchase is entirely at the option of the purchaser does not prevent its working a conversion, if he avails himself of the option." *Pomeroy's Equity Jurisprudence* (4th Ed.), page 2753,

section 1161. Quoting further from *Pomeroy's Equity Jurisprudence* (4th Ed.), section 1160, page 2749, on the question of words sufficient to effect a conversion: "The whole scope and meaning of the fundamental principles underlying the doctrine are involved in the existence of a duty resting upon the trustees or other parties to do the specified act; for unless the equitable ought exist, there is no room for the operation of the maxim, equity regards that as done which ought to be done. The rule is therefore firmly settled, that in order to work a conversion while the property is yet actually unchanged in form, there must be a clear and imperative direction in the will, deed, or settlement, or a clear imperative agreement in the contract, to convert the property—that is, to sell the land for money, or to lay out the money in the purchase of land. (Note) The text is quoted in *West Virginia Pulp & Paper Co. v. Miller,* 176 Fed. 284, 100 C. C. A. 176; *Bartlett v. Gill* [D. C.], 221 Fed. 476; *Flomerfelt v. Siglin,* 155 Ala. 633, 47 So. 106. If the act of converting—that is, the act itself of selling the land or of laying out the money in land—is left to the option, discretion, or choice of the trustees or other parties, then no equitable conversion will take place, because no duty to make the change rests upon them. (Note) This section is cited to this effect in *Mills v. Harris,* 104 N. C. 626, 10 S. E. 704; *Swisher v. Swisher,* 157 Iowa 55, 137 N. W. 1026; *Coyne v. Davis,* 98 Neb. 263, 154 N. W. 547; and quoted in *Bartlett v. Gill* [D. C.], 221 Fed. 476; *Flomerfelt v. Siglin,* 155 Ala. 633, 47 So. 106; *Maxwell v. Barringer,* 110 N. C. 76 S. E."

The case of *Stake v. Mobley,* 102 Md. 408, 62 A. 963, is stressed by the appellant, but in that case an absolute power of sale was given in the will.

The testimony shows without contradiction that the real estate is not susceptible of partition in kind without material loss and injury to the parties entitled to interests therein, they being tenants in common. The contract made by the testator having been rescinded and the executor having no power of sale other than the contract,

in order to make division, the chancellor was correct in appointing a trustee for the sale and for the distribution among the parties entitled thereto of their respective interests therein. *Flack's* Code 1939, art. 16, sec. 159. We quote from *Barron v. Zimmerman*, 117 Md. 296, at pages 304 and 305, 83 A. 258, 260. "The allegations of the bill disclose no ground upon which the jurisdiction of the court can be questioned. The interest which the plaintiff claims is not superior to but is in common with the interests which he concedes to the defendants. He has filed his bill in strict conformity to the Code provision that the court may decree a partition or sale of lands upon the bill or petition of any concurrent owner." *Tolson v. Bryan*, 130 Md. 338, 344, 100 A. 366; *Young v. Diedel*, 141 Md. 670, 673, 119 A. 448. There is some dispute in the testimony as to whether the property should be offered as a whole or in two separate tracts and then as a whole. We believe that the chancellor was correct in ordering the property to be offered in two separate tracts, and then as a whole, and to sell in whichever way the most money is procured.

*Decree affirmed, with costs to the appellee.*