**In the Matter of ROGER CRAIG, INC.**
**Bankruptcy No. 11172.**

United States District Court
D. Maryland.
Nov. 27, 1961.

J. Martin McDonough and Wm. Holland Wilmer, II, Baltimore, Md., and Howard Larcombe, Silver Spring, Md., for trustee.

Leonard S. Melrod and Joseph V. Gartlan, Jr., Washington, D. C., for Benjamin Krick.

James F. Tomes, Silver Spring, Md., for Roberts E. Latimer, Jr., Inc.

THOMSEN, Chief Judge.

The pending petitions for review of a decision of the Referee arise out of conflicting claims to a fund now held by attorneys for University Boulevard Baptist Church[1] representing the purchase price of a parcel of land in Montgomery County, Maryland, sold to the Church by Daniel M. Ostrow et ux. The claimants are: the Trustee of Roger Craig, Inc. (the debtor herein), Benjamin Krick, and Roberts E. Latimer, Jr., Inc. Two questions must be decided: (1) Is the claim of the Trustee entitled to priority over the claim of Krick? (2) Does the Court have jurisdiction in this proceeding to determine whether Krick's claim is entitled to priority over Latimer's claim?

The material facts are not disputed.[2] Fee simple title to the land in question had been acquired by Ostrow in 1955. On June 28, 1957, he and his wife sold the land to the Church and executed a contract of sale which was recorded among the land records of Montgomery County on July 12, 1957. The contract recited a deposit of $10,000 and provided for the payment of the balance of $38,-213.00 at the time of settlement, within three years.

By deed dated August 1, 1958, recorded among the land records on August 11, 1958, Ostrow and his wife, who were estranged, conveyed to Roger Craig, Inc., which was owned and controlled by Ostrow, several parcels of land, including the Church property, together with the rights, privileges and appurtenances belonging thereto, in fee simple. There was testimony before the Referee that the inclusion of the Church property was inadvertent, but the Referee found that the deed must be construed as passing to Roger Craig, Inc. whatever interest the Ostrows retained in that property. The deed recited a consideration of $10.00 but bore no stamps. No notice of that conveyance was ever sent to the Church.

By a document not under seal, undated but acknowledged on July 17, 1959, Ostrow and his wife assigned to Benjamin Krick, a plumbing and heating contractor, all their right, title and interest in and to the proceeds of the contract with the Church. This assignment was made for value received in the form of credits against a past indebtedness in excess of $38,213.00 for labor and materials supplied by Krick to Ostrow for use in the construction of various houses which he and his corporations were building. No notice of this assignment was given to the Church or its attorneys until February 1960.

In December 1959 the Church agreed to sell to Kernwood Construction Co. for $45,000 part of the land included in the contract of sale from the Ostrows. Both Kernwood and the Church employed the firm of Conroy, Williams, Nylen, Gilmore and Simpson to examine the title and represent them at the settlement with Ostrow. In examining the title the attorneys missed the deed from the Ostrows to Roger Craig, Inc.

On February 16, 1960, Krick's attorneys notified Conroy, Williams that the proceeds of sale of the Church property had been assigned by the Ostrows to Krick.

Sometime between February 18 and March 1, 1960 Conroy, Williams learned of the deed dated August 1, 1958 from the Ostrows to Roger Craig, Inc.

On February 26, 1960 Latimer obtained judgments totaling $21,863.60 (including fees and costs) against Ostrow and Forest Knolls, Inc., in the Circuit Court for Montgomery County and caused an attachment to be issued and laid in the hands of Conroy, Williams.

On March 9, 1960, settlement was had and the Church elected to pay the entire balance of the purchase price, $40,012.13, in cash. A deed from Roger Craig, Inc., to the Church, reciting a consideration of $10.00 but bearing no stamps, and a deed from the Ostrows to the Church,

1. Formerly Bethel Baptist Church.

2. See findings of fact in the certificate and supplemental certificate of the Referee.

bearing stamps indicating a consideration of over $48,000, both dated March 1, 1960, were delivered and recorded on March 16, 1960.

Also on March 16, 1960, the Title Company, as escrow agent, issued its check for $17,448.16 payable to Daniel Ostrow, Roger Craig, Inc., and Benjamin Krick. Ostrow endorsed the check individually and as president of Roger Craig, Inc., and it was paid to Krick. The balance of the purchase price, $22,084.09, was turned over to Conroy, Williams as agents and attorneys for Kernwood and the Church, and is still held by them.

The Chapter X proceedings against Roger Craig, Inc., were instituted in this Court on April 8, 1960. The Trustee filed a turnover petition herein against Conroy, Williams for the entire sum paid by the Church at the settlement or the balance thereof remaining in their hands.

Since the check for $17,448.16 was made payable to Roger Craig, Inc., as well as to Ostrow and Krick, and was endorsed by Ostrow as president of that corporation, it would appear that as against the Trustee of Roger Craig, Inc., the escrow agent and the attorneys are clearly entitled to credit for that amount in the absence of fraud, which is neither alleged nor proved. Conroy, Williams make no claim to the balance of $22,084.-09 for themselves or their clients. Krick filed an answer and a claim to the balance of the fund, and Latimer filed an answer.

After several hearings the Referee filed an opinion, in which he held: "The subsequent equitable assignment to Benjamin Krick is entitled to priority in payment over the prior equitable assignment to Roger Craig, Inc., since the subsequent assignment was supported by consideration and notice of this assignment was given to the debtor." By order dated January 27, 1961, the Referee dismissed the turnover petition filed by the Trustee, but refused to pass on the relative priority of the claims of Krick and Latimer to the fund in the hands of Conroy, Williams.

Petitions to review have been filed by the Trustee and by Krick, claiming the fund. Latimer questions the jurisdiction of this Court to determine the dispute between Latimer and Krick.

### (1)

■ The Trustee concedes that the doctrine of equitable conversion applies in this case, and that after the execution of the contract of sale to the Church on June 28, 1957, the Ostrows retained only the bare legal title to the property as security for their vendors' lien. See Birckner v. Tilch, 179 Md. 314, 323, 18 A.2d 222 (1941), cert. den. 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 509, reh. den. 314 U.S. 710, 62 S.Ct. 174, 86 L.Ed. 566; Linthicum Heights Co. v. Firemen's Ins. Co., 134 Md. 62, 71, 106 A. 165 (1919); McRae v. McRae, 78 Md. 270, 283, 27 A. 1038 (1893); 21 Op.Atty.Gen. of Md. 797; Smith v. Glen Alden Coal Co., 347 Pa. 290, 32 A.2d 227. In Birckner v. Tilch, the Maryland Court quoted with approval from Pomeroy's Equity Jurisprudence, 4th ed., sec. 1611, in part as follows: "A contract of sale, if all the terms are agreed upon, also operates as a conversion of the property, the vendor becoming a trustee of the estate for the purchaser, and the purchaser a trustee of the purchase money for the vendor." [179 Md. 314, 18 A.2d 226.]

■ The deed from the Ostrows to Roger Craig, Inc. conveyed to that corporation the Ostrows' bare legal title to the property covered by the contract of sale to the Church, and their right to receive the purchase money. The Trustee argues that with respect to the Church property, the deed was in substance the assignment of a chose in action. The Maryland Court has not attached a label to the lien or other right retained by a vendor who has executed a contract of sale of realty; but the parties are agreed that the right is personal property, not real property, and that recording an assignment thereof among the land records does not give constructive notice. Glenn v. Davis, 35 Md. 208 (1872); Lambert v. Morgan, 110 Md. 1, 72 A. 407, 408 (1909).

In Lambert v. Morgan the Maryland Court adopted the rule of Dearle v. Hall, 3 Russ. 1, that "the assignee who first gives notice to the debtor obtains priority". See also In re Seim Construction Co., D.Md., 37 F.Supp. 855, 858 (1943); Page, Latent Equities in Maryland, 1 Md.L.Rev. 1. The Trustee contends, however, that the rule has been changed by the statute which is codified as Art. 8, sec. 1 of the Annotated Code of Maryland, 1957 ed.[3] It will be necessary to consider the background and legislative history of that statute.

Applying a Pennsylvania rule, similar to the rule in Lambert v. Morgan, the Supreme Court of the United States held in Corn Exchange Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943), that where a bank made advances to a corporation which were secured by concurrent assignments to the bank of accounts receivable, no notice of which was given to the debtors, the bank's title to the receivables could not prevail against a trustee in bankruptcy, because the assignments were not "perfected" and could not pass the "bona fide purchaser" test then required by sec. 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a.

The Klauder case caused consternation among those engaged in accounts receivable financing.[4] Seventeen days after the Supreme Court decision a bill was introduced into the Maryland Legislature, which as amended became ch. 728 of the Acts of 1943, now codified as Art. 8, sec. 1, Anno. Code of Md., 1957 ed. As originally introduced the title and body of the bill embraced all written "assignments of choses in action". As amended and enacted, the statute[5] provides:

"All written assignments, and all written assignments in the nature of a pledge, or accounts receivable and amounts due or to become due on open accounts or contracts, except in cases where notice to the debtor of such assignment is specifically required by any policy of insurance or a statute then in effect, shall be valid and legal and shall pass the title of such accounts receivable and amounts due or to become due on open accounts or contracts to the assignee thereof, and shall take effect according to the terms of the assignment, without the necessity of notice to the debtor, and the transfer of the title shall take effect and be valid and enforcible against all persons as of the date thereof; provided, however, that in any case where notice of assignment is not given to the debtor, and acting without knowledge of such assignment the debtor pays or discharges in whole or in part the obligation to the original owner or a subsequent assignee of the owner of the same, in good faith, such payment shall be sufficient acquittance to the debtor in whole or pro tanto, as the case may be."

The statute was clearly intended to apply to accounts receivable financing and similar transactions. Maryland Cooperative Milk Producers v. Bell, 206 Md. 168, 110 A.2d 661 (1955); Automobile Acceptance Corp. v. Universal Corp., 216 Md. 344, 139 A.2d 683 (1958). It is not clear whether it was intended to apply to such transactions as are involved in this case.

In Maryland Cooperative Milk Producers v. Bell, supra, the Maryland Court

---

3. Ch. 728 of the Acts of Maryland, 1943; Art. 8, sec. 1A of the 1939 Code; Art. 8, sec. 2 of the 1951 Code.

4. See Arnold, Bankruptcy—Sec. 60a Amended, 1950, 14 Md.L.Rev. 311; Stiller, Inventory and Accounts Receivable Financing: The Maryland Maze, 18 Md. L.Rev. 185; Craig, Comment: Accounts Receivable Financing, 65 Harv.L.Rev. 627; Conwill and Ellis, Much Ado-About

Nothing: The Real Effect of Amended 60(a) on Accounts Receivable Financing, 64 Harv.L.Rev. 62.

Sec. 60, sub. a of the Bankruptcy Act was amended in 1950 to substitute the "lien creditor test" as to personalty for the "bona fide purchaser" test.

5. The title was also amended to conform to the provisions of the bill as enacted.

said: "This statute clearly recognizes the right to assign amounts to become due on an existing contract, and also obviates the necessity of notice in order to validate the assignment. Probably it was not designed to change the preexisting law, but to dispense with notice as a requirement of the Federal law, as construed in 'perfecting' claims against a subsequent trustee in bankruptcy of the assignor. See 2 Williston, Contracts (Rev.Ed.) § 435A, 1954 Suppl., p. 61. In McDowell, Pyle & Co. v. Hopfield, 148 Md. 84, 128 A. 742, 52 A.L.R. 105, and Seymour v. Finance & Guaranty Co., supra [155 Md. 514, 142 A.2d 710], it was held that notice was not necessary to validate an assignment, even before the statute. See also 2 Williston, Contracts (Rev.Ed.) § 433. But notice may still be a factor in determining priorities as between the various parties or claimants, for the assignment is equitable in its nature and is open to equitable defenses. See Lambert v. Morgan, 110 Md. 1, 72 A. 407; Pen Mar Co. v. Ashman, 152 Md. 273, 136 A. 640; In re Seim Const. Co., D.C.Md., 37 F.Supp. 855; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903 (CCA 4); 2 Williston, Contracts, (Rev. Ed.) § 432 and § 447; Restatement, Contracts, § 167; 1 Md.L. Rev. 1. We do not understand that the Act of 1943 was designed to alter the general rule or to repeal Code 1951, Art. 8, sec. 4, supra." 206 Md. at 176, 177, 110 A.2d at 655.

█ Granted that the passage quoted may be dictum, in whole or in part, the dictum is entitled to great respect by this Court, which must follow Maryland law on the point at issue. The Referee concluded that notice is still a factor in determining priorities as between the various parties and claimants in such a case as this, and that the equities should also be considered.

The deed from the Ostrows to Roger Craig, Inc. was in effect an assignment of their right to receive the money to become due under their contract of sale to the Church. But the doctrine *noscitur a sociia* must be heeded; such a contract does not march with "accounts receivable and amounts due or to become due on open accounts", phrases which immediately precede the words "or contracts" of the statute. Indeed, the nature of the right so assigned, as indicated by the quotation from Pomeroy in Birckner v. Tilch, supra, is akin to the right of a *cestui que trust*. So, equitable considerations rather than commercial convenience should control the decision in this case.

Neither side was diligent in giving notice, but Krick's notice was first in time, and there are equities in his favor. He had supplied labor and materials for the houses being built by Ostrow and his corporations, and seems to have withheld other action in reliance on his assignment. No valuable consideration for the assignment to Roger Craig, Inc. has been shown; it was evidently a matter of convenience.

█ The Referee correctly held that Krick's assignment and claim to the fund is entitled to priority and must prevail over the claim of the Trustee herein. The fund is not a part of the bankrupt estate.

This decision makes it unnecessary to pass on the question whether the claim of the Trustee to the fund would prevail over Latimer's claim.

(2)

It must be decided, however, whether this Court has jurisdiction to pass on the relative priority of the Krick and Latimer claims to the fund in the hands of Conroy, Williams. As we have seen, Krick filed an answer to the Trustee's petition, in which he asked the Court to determine that he (Krick) was entitled to the fund. Latimer also filed an answer, in which he alleged that the fund belonged to Ostrow, subject to Latimer's attachment, and prayed that the rule to show cause be discharged, with prejudice.

█ Generally, where the controversy concerns property in the actual or constructive possession of a bankruptcy

court, that court may adjudicate summarily all rights and claims pertaining thereto, and with consent of the adverse claimants, may adjudicate the title to property not in the possession of the trustee; but the court is without power to adjudicate adverse claims to the title to property, without consent, not in the actual or constructive possession of the trustee. 2 Collier on Bankruptcy, 14th ed., para. 23.04, p. 450; Magnolia Petroleum Co. v. Thompson, 8 Cir., 106 F. 2d 217;[6] Stark v. Baltimore Soda Fountain Mfg. Co., 4 Cir., 185 F.2d 398 (1950).

■■ Conroy, Williams are not adverse claimants to the fund, see Collier, para. 23.06, esp. p. 493 et seq., but Krick and Latimer are; and since the fund is not in the possession of this bankruptcy court and is not a part of the bankrupt estate, this Court has no jurisdiction in this case to rule on the relative priority of the Krick and Latimer claims unless they have consented to such jurisdiction. It is true, as Krick argues, that once consent to the summary jurisdiction of the bankruptcy court appears, jurisdiction will be retained for the determination of all claims of the parties and for the enforcement of all their rights against each other. Collier, para. 23.08, p. 517; In re Blake, 8 Cir., 150 F. 279 (1906). But Latimer did not consent to the jurisdiction of the bankruptcy court. The language of its answer which it contends disputes jurisdiction is indeed ambiguous, and if the issue were between the Trustee and Latimer the question of jurisdiction would be trouble-some. But as the question is between Latimer and Krick, there is less reason for the Court to retain jurisdiction. Kaplan v. Guttman, 9 Cir., 217 F.2d 481 (1954). Both of them are located in Montgomery County; the question is one of Maryland law; the Referee refused to pass on the question and heard no arguments with respect thereto; the issue would have to be remanded to him for further evidence and argument, and he is pressed by a large and increasing volume of work which only this bankruptcy court has jurisdiction to handle. The matter should be disposed of in the state court, out of which Latimer's attachment issued.

Krick's argument that Latimer's attachment was laid in the hands of Conroy, Williams within four months prior to the filing of the petition in this case is irrelevant to the question whether this Court has jurisdiction of the controversy between Krick and Latimer. The attachment was issued on a judgment against Ostrow, not on a judgment against the debtor herein. Irrelevant too is the fact that Latimer has filed a claim in this proceeding based upon an unrelated matter. Finally, Krick's contention that Latimer is without standing to be heard in opposition to Krick's petition for review because Latimer did not itself file a petition for review is either frivolous or disingenuous in view of the answer filed by Latimer, the proceedings before the Referee, and his final order.

### Order

The order of the Referee dated January 27, 1961, is hereby confirmed.

---

6. Rev'd on other grounds, Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. The Supreme Court said, p. 481, 60 S.Ct. p. 630: "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy."